Affirmed and Memorandum Opinion filed February 20, 2007








 Affirmed and Memorandum Opinion filed February 20, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00047-CR

____________

 

RICKIE JEROME COOPER, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 337th
District Court

Harris County, Texas

Trial Court Cause No. 1034431

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Rickie Jerome Cooper, appeals his conviction for
the felony offense of aggravated assault.  Appellant was found guilty in a
bench trial and sentenced to confinement in the state penitentiary for a term
of seven years.  In three points of error, appellant argues: (1) the evidence
was factually insufficient to support a finding of guilt; (2) the record fails
to provide proof he waived, in writing, his right to a trial by a jury; and (3)
his counsel rendered ineffective assistance.  We affirm.








Appellant bought two pit bull dogs from Willie Coleman,
approximately four or five years before the alleged assault.  The dogs died of
parvo.  Appellant sought a return of the $500 he paid for the dogs.  Appellant
and Coleman had an ongoing series of altercations over the money.  Once,
appellant confronted Coleman while both were incarcerated in the Harris County
jail.  Later, appellant broke out a window of Coleman=s vehicle.

On July 2, 2005, appellant, Coleman, and Coleman=s brother, Chris,
met each other at a local barber shop.[1] 
A dispute erupted, and appellant left the barber shop for 20 to 30 minutes. 
During this hiatus, appellant made two phone callsCone to Kevin
Davis, also known as AK.K.,@ and the other to
Al Vester, also known as APapa,@[2] because he was
uncomfortable confronting Coleman by himself with Coleman=s brother
present.  Appellant returned to the barber shop with Vester who attempted to
mediate the dispute.   However, as the encounter became more heated, Patrick
Myles, a barber, told appellant, Coleman, Chris, and Vester to Atake it outside.@  After a heated
exchange in the parking lot, Coleman said he turned to leave and was
immediately shot by appellant.  The bullet entered Coleman=s left buttock,
passed through his genitalia, into his right thigh and out the front. 
Appellant went to his truck where his girlfriend, Quieteller Smith, was
waiting.  They left the scene without calling 911 or the police.  Appellant and
Smith drove to ASkinny Man=s@[3] house, and
subsequently returned home.  Appellant claimed self-defense and alleged Coleman
brought the gun to the barbershop.  Coleman testified that appellant brought
the gun and shot him over the disputed debt.








In his first point of error, appellant contends the
evidence is factually insufficient to support his conviction.  In conducting a
factual sufficiency review, we view the evidence in a neutral light and will
set aside the verdict only if the verdict is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust.  Cain v. State,
958 S.W.2d 404, 407B08 (Tex. Crim. App. 1997).  A clearly
wrong and unjust verdict occurs when the finding is Amanifestly unjust,@ Ashocks the
conscience,@ or Aclearly demonstrates bias.@  Prible v.
State, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005).  We must employ
appropriate deference so that we do not substitute our judgment for that of the
fact finder.  Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App.
1996).  We do not engage in a second evaluation of the weight and credibility
of the evidence, but only ensure that the trier of fact reached a rational
decision.  Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993). 

There are two ways in which the evidence may be
insufficient.  Harris v. State, 164 S.W.3d 775, 784 (Tex. App.CHouston [14th
Dist.] 2005, pet. ref=d).  First, when considered by itself,
evidence supporting the verdict may be too weak to support the finding of guilt
beyond a reasonable doubt.  Id.  Second, there may be evidence both
supporting, and contrary to, the verdict.  Id.  Weighing all the
evidence under this balancing scale, the contrary evidence may be strong enough
that the beyond‑a‑reasonable‑doubt standard could not have
been met and the guilty verdict should not stand.  Id.  If there is
evidence that establishes guilt beyond a reasonable doubt which the trier of
fact believes, the judgment cannot be reversed on sufficiency of the evidence
grounds.  Wicker v. State, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). 
Our analysis must consider the evidence appellant claims is most important in
allegedly undermining the verdict.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).  The evidence deemed most important to appellant
appears to be the Emergency Medical Services (AEMS@) report, the
shorts placed into evidence, and the conflicting testimony.  

Appellant contends the EMS report is consistent with his
testimony and not Coleman=s.  The EMS report states that Coleman
told the paramedics that Aa friend that he had a falling out with
walked up and shot him close range with a 9mm gun.@  Coleman
testified it was the paramedics who said it looked like a 9mm gunshot at close
range.  Coleman said he did not know what caliber of gun was used.  Coleman
further testified appellant was eight or nine feet from him when he was shot. 
The trial judge pointed out that Aclose range@ was not an exact
measurement, and certainly eight or nine feet would be within Aclose range.@  








Appellant also claims the entry/exit pattern described in
the EMS report is not consistent with a shot fired from eight or nine feet
away.  The EMS report states that the bullet entered, Ahitting pt in left
buttox [sic], and exiting right leg.@  During trial,
appellant demonstrated with his attorney the alleged struggle with the gun. 
Appellant claimed he was facing Coleman when the gun fired, while they Atussled.@[4]  However, the
entry/exit pattern is not consistent with appellant=s testimony that
he and Coleman were facing each other and Atussling@ when the gun went
off.  Before appellant closed, the trial court examined the EMS report.  The
trial court asked appellant=s attorney how, if appellant and Coleman
were facing each other as appellant demonstrated, Coleman could be shot from
behind.  Appellant=s attorney had no explanation.  The trial
court pointedly observed it would be very difficult for appellant to shoot
Coleman in the buttock while they faced each other.

Appellant next argues that the State did not contradict the
defense evidence concerning the particular black shorts appellant claims he
wore the day of the incident.  Appellant contends this is important because the
shorts he placed into evidence did not have a pocket large enough to hold a
gun.  Myles and Coleman each testified they could not remember what kind of
shorts the appellant was wearing.  However, Myles, the only disinterested
witness, repeatedly testified appellant had a large lump in his pocket that he
feared was a gun.  Coleman testified appellant brought the gun that was used against
him.








Finally, appellant contends that conflicts between Coleman=s testimony and
the testimony of other witnesses renders Coleman=s testimony
unreliable.  For example, Coleman testified appellant was in the barbershop
when he arrived.  Myles stated, however, that appellant arrived after Coleman
did.  Appellant claims this discrepancy shows Coleman=s testimony was Aunreliable.@  However,
appellant=s own testimony confirms much of Coleman=s testimony.  
Appellant testified that he left the barber shop and returned with Vester. 
Thus, on this point, the alleged Aconflict@ in the testimony
seems superficial at best.

Further, appellant=s brief ignores
the inconsistencies in appellant=s own testimony,
as well as those in the testimony of other defense witnesses.  Smith testified
she was with appellant all day.  Smith stated she did not call the police
because appellant was not hurt and had committed no crime.  On cross
examination, Smith testified she and appellant drove to Skinny Man=s house.  She
further testified that appellant never told her Coleman had pulled a gun on
him.  Smith stayed in the truck while appellant went into the house for about
thirty minutes, and when appellant returned, Smith asked him if he was okay. 
When the State=s attorney asked her why she asked that, Smith replied
Abecause he could
have been shot.@  The State=s attorney
reminded Smith she testified she did not call the police because appellant had
neither been hurt nor had he committed a crime.[5]


Appellant testified Davis arrived at the barbershop before
Coleman came out of the barbershop and before Vester arrived.  Davis, however,
said he arrived just as Coleman was shot and that he promptly left the scene.

Finally, appellant testified he stayed at the barbershop
because he thought he was going to get paid.  Appellant then testified he
stayed to fight because he wanted justice.  Thereafter, appellant testified he
stayed because he wanted a chance to hit Coleman, although he knew fighting
would violate his parole.  Appellant, Smith, and Davis all testified Coleman
and appellant were Atussling@ when the gun went
off.  However, Coleman testified he and appellant never physically fought.








Coleman testified that prior to being shot, he was standing
by the hood of his car, and appellant was behind him by the trunk.  Coleman
also testified he told appellant he was through talking, and as he turned away,
someone said AWill.@  He heard the gunshot, and looked towards
appellant before falling to the ground.  Thus, part of appellant=s testimony
supports Coleman=s version of the facts.  Appellant
testified that when he went outside immediately before the shooting, Athey all three
like go by Will=s car; and that=s when I go in
behind them.@[6]  Myles testified
he heard the gunshot approximately one minute after Coleman had left the
barbershop.  Appellant=s time-delay was longer, to account for
the eruption of a fight. 

It is within the province of the trier of fact to resolve
any conflicts and inconsistencies in the evidence.  Heiselbetz v. State,
906 S.W.2d 500, 504 (Tex. Crim. App. 1995).  When faced with conflicting
evidence, we presume the trier of fact resolved conflicts in favor of the
prevailing party.  Turro v. State, 867 S.W.2d 43, 47 (Tex. Crim. App.
1993).  The conflicts recited above were within the province of the trier of
fact to resolve.  Moreover, the trier of fact is the sole judge of the
credibility of the witnesses and is free to believe or disbelieve all, part, or
none of any witness= testimony.  Sharp v. State, 707
S.W.2d 611, 614 (Tex. Crim. App. 1986).

A decision is not manifestly unjust merely because the
trier of fact resolved conflicting views of the evidence in favor of the
State.  Cain, 958 S.W.2d at 410.  Accordingly, we overrule appellant=s first point of
error.








In his second point of error, appellant contends his
conviction must be overturned because the record does not contain a written
waiver of his right to a jury trial in accordance with Article 1.13 of the
Texas Code of Criminal Procedure..[7] 
This issue was addressed by the Court of Criminal Appeals in  Johnson v.
State, 72 S.W.3d 346, 349 (Tex. Crim. App. 2002).  There, as here, the
judgment of the trial court contained a recitation of a waiver of a jury trial.
 The court held that a such a recitation is generally sufficient.  Id. 
The Court stated it must be presumed that the recitation in the judgment is
binding in the absence of direct proof of falsity.  Id.  Johnson merely
argued, as appellant does here, that there was no written jury waiver, not that
he did not waive his rights.  Id. at 348.  The court found such omission
to be a statutory error, not a constitutional one.  Id.  Therefore, the
court stated the harm must be analyzed under Texas Rule of Appellate Procedure
44.2(b).[8] 
Id.  The Court found although Article 1.13(a) was violated, Johnson was
not harmed because the record contained a recitation of waiver in the
judgment.  Id. at 349.








           While
appellant contends the error here is of constitutional magnitude,[9]
we cannot distinguish the case before us from the facts and circumstances
presented in Johnson.  Accordingly, we analyze harm under Rule 44.2(b). 
If the error does not affect substantial rights, it must be disregarded.  Tex. R. App. P. 44.2(b).  The judgment
states appellant waived a trial by a jury.  Appellant never alleged he did not
know about his right to a jury trial, nor that he did not agree to a bench
trial.  Having no evidence in the record that the judgment=s recitation that
appellant waived a trial by a jury is false, we are bound by that statement. 
Accordingly, we overrule appellant=s second point of
error.

In his third point of error, appellant contends his
attorney provided ineffective assistance of counsel.  To prove ineffective
assistance of counsel, appellant must show that (1) trial counsel's
representation fell below an objective standard of reasonableness, based on
prevailing professional norms, and (2) there is a reasonable probability that
the result of the proceeding would have been different but for trial counsel's
deficient performance.  Strickland v. Washington, 466 U.S. 668, 688‑92
(1984).  Moreover, appellant bears the burden of proving his claims by a preponderance
of the evidence.  Jackson v. State, 973 S.W.2d 954, 956 (Tex. Crim. App.
1998).

 In assessing appellant's claims, we apply a strong
presumption that trial counsel was competent.  Thompson v. State, 9
S.W.3d 808, 813 (Tex. Crim. App.1999).  We presume counsel's actions and
decisions were reasonably professional and were motivated by sound trial
strategy.  Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App.
1994).  When, as in this case, there is no proper evidentiary record developed
at a hearing on a motion for new trial, it is extremely difficult to show trial
counsel's performance was deficient.  Bone v. State, 77 S.W.3d 828, 833
(Tex. Crim. App. 2002).  If there is no hearing or if counsel does not appear
at the hearing, an affidavit from trial counsel becomes almost vital to the
success of an ineffective‑assistance claim.  Stults v. State, 23
S.W.3d 198, 208‑09 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref'd).








Here, appellant argues he received ineffective assistance
of counsel because trial counsel failed to object to the introduction of
extraneous offenses during the cross-examination of appellant.[10] 
There was no motion for a new trial, and no affidavit from trial counsel
appears in the record to overcome the presumption of reasonable performance. 
Thus, appellant fails the first prong of the Strickland test, and we
overrule his third point of error.[11]

Having considered and overruled appellant=s three points of
error, we affirm the judgment of the trial court.

 

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed February 20, 2007.

Panel consists of
Justices Yates, Anderson, and Hudson.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 









[1]  Chris did not testify because he was shot and killed
prior to the trial.





[2]  Coleman testified he thought APapa=s@ name is Al Vester.  Appellant testified APapa=s@ name is Nathaniel House.  Both agree he is known as
Papa.





[3]  Smith only knew the man as ASkinny Man.@ 
In his testimony, appellant identifies Skinny Man as Chris Hawkins.





[4]  Much of the testimony given on direct and
cross-examination of various witnesses concerned the locations of people and
vehicles in the parking lot at the time of the incident or courtroom
demonstrations.  Testimony often consisted of pointing on various photos used
as evidence to show the locations or live demonstrations.  The trial judge,
however, was in a position to see and appreciate the photos, gestures and
demonstrations.





[5]  Additionally, Smith testified appellant told her he
was going to fight when he called her.  Smith=s earlier testimony insisted she was with appellant all day, and she
went with him to the barber shop.  It is unclear from this testimony when
appellant called Smith to tell her he was going to fight.





[6]  AThey all three@ refers to Coleman, Chris, and Papa





[7]  Article 1.13 of the Texas Code of Criminal Procedure
reads, in the pertinent part:

a) The defendant in a criminal prosecution for any
offense other than a capital felony case in which the State notifies the court
and the defendant that it will seek the death penalty shall have the right,
upon entering a plea, to waive the right of trial by jury, conditioned,
however, that such waiver must be made in person by the defendant in writing in
open court with the consent and approval of the court, and the attorney
representing the State. The consent and approval by the court shall be entered
of record on the minutes of the court, and the consent and approval of the
attorney representing the State shall be in writing, signed by him, and filed
in the papers of the cause before the defendant enters his plea.

 

Tex. Code Crim. Proc. Ann. art. 1.13(a) (Vernon 2005).

 





[8]  Tex. R. App.
P. 44.2(b).





[9]  Appellant cites Meek v. State to assert the
waiver error is constitutional, not statutory, and, therefore, must be
overruled unless this court determines the error did not contribute to his
conviction or punishment.  851 S.W.2d 868, 870B71 (Tex. Crim. App. 1993).  In Meek, the appellant effectively
objected to the accuracy of the judgment by his request for a remand pursuant
to Rule 55 of the Texas Rules of Appellate Procedure, and obtained a hearing on
the issue of the written jury waiver.  Id. at 870.  The record was
developed and evidence was admitted disputing the judgment's statements that a
waiver was signed by the appellant.  Id.  This is not our case.  Here,
appellant first objected to the lack of written waiver on appeal.  The Texas
Court of Criminal Appeals stated the Meek opinion was fact specific.  Id. 
The court distinguished the Meek opinion from others holding the absence
of a written jury waiver from the record on direct appeal did not overcome the
presumption of regularity and truthfulness of the judgment where there was no
objection to the accuracy of the judgment, and no affirmative showing in the
record that a written jury waiver was not executed by the defendant.  Id. 
AWe note that our opinion here turns upon the fact that
there was evidence that appellant did not sign the jury waiver as
required by article 1.13.  We do not intend that this opinion necessarily
extends to violations of other requirements of article 1.13 . . .@  Id. at 871, n.6. (emphasis added).





[10]  A girlfriend charged appellant with pulling a gun on
her, and assault.  The charges were dismissed.





[11]  The State introduced these same offenses during
Smith=s cross-examination.  Appellant=s counsel timely objected.  The State contended it
offered the offenses in rebuttal to character evidence introduced by
appellant.  Appellant=s objection was sustained.  However, the trial court
allowed the State to rephrase, and Smith to answer.  Even assuming appellant=s assertion that counsel needed an additional
objection during appellant=s
cross-examination is correct, he must show, as part of his claim, the evidence
was inadmissible.  Ortiz v. State, 93 S.W.3d 79, 93 (Tex. Crim. App.
2003).  Under Rule 405(a), inquiry into specific instances of conduct are
allowed during cross-examination, where opinion or reputation testimony as to
character has been admitted.  Tex. R.
Evid. 405(a).  Defense witnesses testified appellant was a nonviolent
person and each witness claimed to have never seen appellant with a gun. 
Appellant testified during cross-examination that he does not carry guns and is
not a violent man.  Thus, appellant has failed to show the references to the
extraneous offenses were inadmissible.