Affirmed and Memorandum Opinion filed May 31, 2007















Affirmed and Memorandum Opinion filed May 31, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-04-00384-CR

_______________

 

CURTIS JAMES WILKERSON, Appellant

 

V.

 

THE STATE OF TEXAS,
Appellee

                                                                                                                                               


On Appeal from the 278th District Court

 Grimes
 County, Texas

Trial Court Cause No. 14,085-B

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N

 

A jury
found appellant, Curtis James Wilkerson, guilty of three counts of aggravated
robbery, and the trial court sentenced him to fifty years= confinement.[1]  In three
issues, appellant contends the trial court erred by
(1) sentencing appellant for two of the three counts of aggravated robbery
because the evidence is legally and factually insufficient, (2) allowing
appellant to be convicted on accomplice testimony that was insufficiently
corroborated, and (3) admitting into evidence guns which were never identified
or properly authenticated.[2]
Because
all dispositive issues are clearly settled in law, we
issue this memorandum opinion and affirm. See Tex. R. App. P. 47.4. 

I.  Background 

On
December 4, 1998, at around 9:30 a.m. two African-American men wearing black
ski masks and carrying guns entered A&B Food Mart in Grimes County. 
One man remained at the entrance door while the other man approached the cash
register counter. The man who approached the cash register asked the employee working at the cash register, Kh
Ali Azam, for an adult magazine.  When Azam turned around from retrieving the magazine behind the
counter, the man pointed a gun to his head and said, AGive me money or I will shoot you.@ 
When Azam did not immediately give him money, the man
said, AGive me your money. Give me your money.@  

 

Store
owner, Intekhab Chowdury,
and his manager, Muhammed Baqui,
were standing behind the deli counter.  They told Azam
to give the men the money.  Out of fear for their safety, Chowdury and Baqui, crawled on the floor behind the deli counter to the back
room.  Azam slapped the gun that was pointed at
him and dropped to the floor behind the counter.  Azam
then crawled to the back room.  The armed man at the entrance door fired
his gun, hitting the lottery ticket machine approximately two feet from the
register.  He also fired a shot toward the back room and hit the upper
left side of the door frame.  Chowdury, Baqui, and  Azam
stayed in the back room with the door locked until customers knocked on the
door and told them the robbers had left the store.  One of the witnesses
at the store called the police.  Mark A. Telthorster
was the first officer to report to the scene.  Officer Telthorster
recovered the two bullets and interviewed Azam and Baqui.  He also interviewed Chris Maldonado, a
Pepsi-Cola delivery driver who saw an African-American man with a large tattoo
on his leg, talking on the outside pay phone moments before the robbery. 
The man with the tattoo yelled at someone on the other side of the building who
Apeep[ed] his head out@ and Awent back real quick.@  Officer Mark Bell arrived to
collect evidence and assumed the role of lead investigator in the case.  

At the same time, Officer Craig Wiesepape,
patrolled the area to look for suspects. Officer Wiesepape  went to Prince
 Hall Plaza,
a nearby apartment complex, where someone told him that Frankie Sanders had
recently come by.  Officer Wiesepape saw Sanders
and appellant at the apartments and mentioned to them that there had been a
robbery at A&B Food Mart.  Sanders told Officer Wiesepape
that he had just awakened. Appellant told Officer Wiesepape
he and Sanders had been to A&B Food Mart that morning but did not see
anyone.  Officer Wiesepape noticed appellant had
a tattoo on the calf of his right leg. 

Officer
Rob Bailey, a canine handler and patrol officer, began a track with his
dog.  Bailey followed the dog to a trail behind the store that led to Prince Hall
 Plaza.  Along the
trail, Officer Bailey found a jacket in a tree branch, a set of footprints, and
a blue revolver.  When Officer Bell joined Officer Bailey on the canine
track and inspected the jacket, a black ski mask fell from the jacket. 
Officer Bell found a Achrome semi-automatic@ handgun when he picked up another
black ski mask along or near the trail.  Later, Officer Bell returned to
the trail to look for more evidence and found a black shirt, a white thermal
shirt, and blue coveralls.  He also made plaster casts of footprints on
the trail.   

 

Officer
Chad Langdon, who was assisting Officer Bailey, inspected the footprints on the
trail.  At Prince
 Hall Plaza,
Officer Bell asked Officer Langdon to inspect the bottom of appellant=s and Sanders=s shoes to determine whether they
matched the footprints on the trail.  Officer Langdon confirmed to Officer
Bell that the shoes and the footprints matched. Officers searched the apartment
where Sanders was staying and found no evidence.  They took Sanders and
appellant to the police station.  The items of physical evidence described
above were submitted for forensic analysis.  

The
forensic experts, investigating officers, eye witnesses, and accomplice
Sanders, testified at trial.  Appellant was convicted by a jury for three
counts of aggravated robbery. 

 II.  Sufficiency of the Evidence 

In his
first issue, appellant contends the trial court erred by sentencing appellant
for two of the three aggravated robbery counts because the evidence is legally
and factually insufficient.  Specifically, appellant contends the evidence
is insufficient for two of the counts because two of the alleged victims were Amerely bystanders@ who did not have fear of imminent
bodily injury.  We disagree.  

In determining legal sufficiency, we view all the evidence
in the light most favorable to the verdict and then determine whether a
rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319 (1979); Salinas
v. State, 163 S.W.3d 734, 737 (Tex.
Crim. App. 2005).  The jury, as sole
judge of the credibility of the witnesses, is free to believe or disbelieve all
or part of a witness=s testimony.  Jones
v. State, 984 S.W.2d 254, 257 (Tex. Crim. App.
1998).  We do not engage in a second evaluation of the weight and
credibility of the evidence, but only ensure the jury reached a rational
decision.  Muniz v.State, 851 S.W.2d 238,
246 (Tex. Crim. App. 1993); Harris v. State,
164 S.W.3d 775, 784 (Tex. App.CHouston [14th Dist.]
2005, pet. ref=d).  

 

In a factual sufficiency review, we view all the evidence
in a neutral light and set aside the verdict Aonly if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.@  Cain v. State,
958 S.W.2d 404, 407 (Tex. Crim. App. 1997) 
(quoting Clewis v. State, 922 S.W.2d
126, 129 (Tex. Crim. App. 1996)).  Before we may
reverse for factual insufficiency, we must first be able to say, with some
objective basis in the record, that the great weight and preponderance of the
evidence contradicts the jury=s verdict.  Watson
v. State, 204 S.W.3d 404, 417 (Tex.
Crim. App. 2006).  When reviewing
evidence, we must avoid intruding on the fact-finder=s role as the sole
judge of the weight and credibility of the witness testimony.   Johnson v. State, 23 S.W.3d 1, 9 (Tex. Crim. App.
2000).  We do not re-evaluate the credibility of witnesses or the
weight of evidence, and will not substitute our judgment for that of the
fact-finder.  Johnson v. State, 967 S.W.2d 410,
412 (Tex. Crim. App. 1998).  

A person commits robbery if, in the course of committing
theft and with the intent to obtain or maintain control of property, he
intentionally or knowingly threatens or places another in fear of imminent
bodily injury or death. Tex. Penal Code Ann. ' 29.02(a)(2) (Vernon 2003). A person commits aggravated
robbery if he commits robbery and uses or exhibits a
deadly weapon. Tex. Penal Code Ann.
' 29.03(a)(2) (Vernon 2003).  The unit of prosecution for
robbery is each victim because robbery is a form of assault, and the allowable
unit of prosecution for robbery should be the same as that for an
assault.  Ex parte Hawkins,
6 S.W.3d 554, 560B61 (Tex. Crim. App. 1999). 
 

 

Appellant
argues that Avictims are not merely bystanders who happen to be in the building.@ 
They must be subjected to the threat of imminent bodily harm.  Here,
appellant was convicted for three counts of aggravated robbery against Chowdury, Baqui, and Azam.  Appellant contends that Azam,
standing at the cash register, was the only victim of the aggravated robbery.
The robbers= demands were directed towards Azam and a gun
was not pointed toward Chowdury and Baqui.  Therefore, appellant contends, Chowdury and Baqui were not
victims as they were not subjected to threats when the robber demanded the
money.  Appellant argues Athe other alleged victims were merely
present in the building, >talking in the back,=@ quoting Chowdury=s testimony.  However, Chowdury and Baqui were in the
main area of the convenience store when the robbers entered.  The record
reflects when Chowdury testified that he and Baqui were Atalking in the back,@ Chowdury
was explaining they were standing behind the deli counter located in the
store.  They were not Amerely on the premises@ as appellant contends in his
brief.  Moreover, Chowdury testified the man at
the cash register pointed the gun at him and Baqui. 
He explained that he was Avery scared@ when the man pointed the gun because at any time the man
could have shot and killed them.   Chowdury
further testified that he was Avery much@ in fear of imminent bodily injury or death.

Baqui testified he saw the robbers for the first time when he heard one of
them yell Agive it to me, give it to me.@  He testified that he did not remember whether he
ducked before or after hearing shots were fired because Ait just spontaneously happened.@  He was so scared that he was
shaking.  He explained that he was in fear of imminent bodily harm after
he heard the shot. 

Appellant
further argues William Wolfe, a customer in the store at the time of the
robbery, testified that Chowdury and Baqui began to run to the back room Aalmost immediately@ and that Wolfe did not mention any
threats or guns pointed at Chowdury or Baqui.  However, the record reflects that Wolfe did
not indicate exactly when they ran to the back room.  Wolfe also testified
that the robber told him to Astay back@ before he demanded the money. 
   

It was the jury=s duty to
determine the credibility of the witnesses and the weight to give their
testimony. See Garza v. State, 633 S.W.2d 508, 514
(Tex. Crim. App. 1982). The jury could choose to
believe or not believe the witnesses or choose to believe or not believe any
portion of their testimony.  Sharp v. State, 707 S.W.2d 611, 614
(Tex. Crim. App. 1986); Rojas v. State, 171
S.W.3d 442, 446 (Tex. App.CHouston [14th Dist.]
2005, pet. ref=d). We will not engage in a second evaluation of the
weight and credibility of the evidence. Muniz, 851
S.W.2d at 246; Harris, 164 S.W.3d at 784.

 

Viewing
the evidence in the light most favorable to the jury=s verdict, we hold a rational trier of fact could have found Chowdury
and Baqui were in fear of imminent bodily  injury or death beyond a reasonable doubt. 
Viewing the evidence in a neutral light, we conclude that the jury=s verdict is not so
contrary to the great weight and preponderance of the evidence as to be clearly
wrong and unjust.  Accordingly, we find the evidence legally and factually
sufficient.  We overrule appellant=s first issue.  

III.  Accomplice Testimony 

In his
second issue, appellant contends the trial court erred by allowing a conviction
based on insufficiently corroborated accomplice testimony.   

Under the accomplice-witness rule, a defendant cannot be
convicted based on the testimony of an accomplice unless the testimony is
corroborated by other evidence tending to connect the defendant with the
offense committed.  Tex. Code Crim. Proc. Ann. art.
38.14 (Vernon 2006).  To determine whether
sufficient corroboration exists, we first eliminate the accomplice witness=s testimony from
consideration and then determine whether any of the remaining evidence tends to
connect the accused with commission of the crime. Longoria v. State, 154
S.W.3d 747, 758 (Tex. App.CHouston [14th Dist.]
2004, pet. ref=d). The corroborating evidence need not be sufficient
in itself to establish guilt, nor must it directly link the accused to
commission of the offense.  Id. 
Rather, the accomplice-witness rule is satisfied if there is some
non-accomplice evidence that tends to connect the accused to commission of the
offense alleged in the indictment.  Id.

 

In analyzing a challenge to the sufficiency of
corroborative evidence, we view the evidence in the light most favorable to the
jury=s verdict and
determine whether a reasonable juror could conclude that the non-accomplice
evidence, taken as a whole, tends to connect the appellant to the
offense.  Gill v. State, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994). Taken in isolation, suspicious circumstances
such as the accused=s presence at the scene of the crime,
motive, or opportunity to commit the crime are not by themselves sufficient to
corroborate the testimony of an accomplice witness. See id. at 49; Jeffery v. State, 169 S.W.3d 439, 447 (Tex. App.CTexarkana 2005, pet. ref=d). But cumulative
suspicious circumstances may tend to connect the accused to the charged
offense, even if one of the circumstances is insufficient. Gill, 873 S.W.2d at 49. Viewed collectively, even otherwise
insignificant incriminating circumstances may tend to connect a defendant to a
crime.  Dowthitt v. State, 931 S.W.2d 244, 249 (Tex. Crim.
App. 1996).  Accordingly, we review all of the facts and
circumstances in evidence to supply the necessary corroboration.  Moore v. State, 700 S.W.2d 193, 203 (Tex. Crim.
App. 1985). We then examine Athe combined and
cumulative weight of the evidence@ in determining
whether the accomplice testimony was corroborated. Cox v.
State, 830 S.W.2d 609, 611B12 (Tex. Crim.
App. 1992).

 

Appellant
does not dispute that Frank Sanders was an accomplice witness.  However,
appellant contends Sanders=s testimony was not sufficiently corroborated because only
his testimony affirmatively placed appellant at the scene of the robbery. 
Excluding
Sanders=s
accomplice-witness testimony, the remaining evidence tends to connect appellant
with commission of the crime.  See Longoria, 154 S.W.3d at 758. First, witnesses testified that both
the man at the cash register holding the silver gun and appellant had a large
tattoo on the leg calf.  Officer Craig Wiesepape
testified he observed a tattoo on  the calf of
appellant=s right leg.  Chris Maldonado, a Pepsi-Cola delivery driver,
testified that he observed an African-American man at the outside pay
phone.  He was wearing a black hood, pulled half-way up over his ears,
baggy shorts, and had a large tattoo on the outside of his right calf muscle Aabout the size of a full hand.@  Later that day, police showed
Maldonado a photo of appellant=s tattoo.  He told police that it looked like the tattoo
he had seen on the man at the pay phone.  At trial, Maldonado was shown a
photo of appellant=s tattoo.  He testified the photo looked like the tattoo
because the one he saw on the man Aspread out in kind of a V.@  He thought the AV@ looked like the wings of a bird when
he first saw it.  Detective David Bell testified that appellant=s tattoo appears to be a small child
with his hands over head and is holding something.  William Wolfe, who was
in the convenience store, testified the man at the cash register who had a Asilver@ gun wore dark, baggy shorts and had
a Atattoo in dark ink on his calf.@  

Javier
Flores, a forensic analyst at Texas Department of Public Safety Crime
Laboratory,  found DNA evidence in saliva in the
lower lip of one of the black ski masks that police found on the trail the
canine led them to between the store and the apartments.  Flores testified that in DNA testing, he can never conclude
there is a definite match in DNA.  He can only determine that someone
cannot be excluded as a potential donor.  Flores
testified one mask did not have enough DNA to perform a comparison. 
However, he retrieved sufficient DNA from the other mask and was able to
exclude Sanders as the donor of the saliva but could not exclude appellant as
the donor.  Wolfe
testified the man at the cash register with a tattoo had a Asilver gun,@ and Officer Bailey
testified he found a Achrome gun@ with a black ski mask on the trail
between the store and the apartments where appellant and Sanders were
arrested.  Flores did not know whether
the mask that potentially contained appellant=s saliva was the same mask found with
the silver gun.  However, only two masks were found on the trail and both
were submitted for DNA testing. 

 

Police
found two sets of footprints at two locations on the trail where other evidence
was recovered. The footprints matched the Ageneral characteristics@ of appellant=s shoe.  During the
initial investigation, Officer Langdon inspected shoes worn by appellant and
Sanders.  He told Officer Bell they appeared to match the footprints on
the trail.  Officer Bell kept both pairs of shoes as evidence.  He
also made plaster casts of the footprints found on the trail.  Juan Rojas,
a forensic chemist at the Department of Public Safety Crime Laboratory examined
the shoes and plaster footprints.  Rojas testified that Aboth of the shoes could have been the
shoes that made the prints on these casts@ because they exhibited Ageneral characteristics@ in the toe and mid-part consistent
with the two pairs of shoes in evidence.  Rojas used the term Ageneral characteristics@ because there were not any Aunique@ cuts on the shoes.  Rojas  explained that Ageneral characteristics@ meant the footprints were made by a
shoe of the same style and size as the shoes taken from appellant and Sanders.

Appellant
contends the guns admitted into evidence were never fingerprinted and no
residue testing was performed.  Officer Bell testified he attempted to
lift fingerprints from the guns but was unsuccessful.  Rojas testified
that he tested hand swabs from both appellant and Sanders for gun
residue.  He did not identify any gun residue; however, he explained that
a negative test does not exclude the possibility that appellant and Sanders shot
guns earlier that day.  

Viewing
all the foregoing evidence in the light most favorable to the jury=s verdict, we conclude a reasonable
jury could find that the cumulative effect of the non-accomplice evidence tends
to connect appellant to the aggravated robberies at A&B Food Mart.  We
overrule appellant=s second issue.  

IV.  Admission of Guns into Evidence 

In his
third issue, appellant contends the trial court erred by admitting guns which
were Anever identified or properly authenticated.@  Specifically, appellant argues
the state did not elicit testimony that the guns offered into evidence were
actually used in the robbery.         We review a
trial court=s decision to admit or exclude evidence for abuse
of discretion. Osbourn v. State, 92 S.W.3d 531, 537 (Tex. Crim. App.
2002). We will not reverse a trial court=s ruling unless
that ruling falls outside the zone of reasonable disagreement. Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim. App.
2001). If the trial court=s ruling is
supported by the record and is correct under any theory of law applicable to
the case, we uphold that ruling. Brito Carrasco v. State, 154 S.W.3d 127, 129 (Tex. Crim. App.
2005). 

 

 Azam testified that the man
at the cash register pointed a Asilver-colored@ gun at him three
to four inches from his head.  He testified that the man at the entrance
door had a different kind of gun with a Ared or burgundy@ butt.  Azam explained that the guns being entered into evidence Alooked similar@ to the guns he
saw during the robbery because they were the Asame color@ and Asame kind.@  He further
testified that he did not know whether they were the Avery same guns@ used in the
robbery. 

A weapon used or alleged to have been used in commission of
a crime is admissible.  Foster v. State, 779 S.W.2d 845, 861 (Tex. Crim. App. 1989) (citing Cole v. State, 450 S.W.2d
661, 662 (Tex. Crim. App. 1970)).  AAn object, such as a
weapon, offered in evidence should not be rejected >solely because it
is not positively identified as the exact object that was connected with the
crime.=@ Id. 
A lack of positive identification affects the weight, not admissibility of the
evidence.  Id. 


Evidence in the record establishes a sufficient connection
between appellant, the guns, and the robbery at A&B Food Mart.  See
id.  In addition to Azam=s testimony
regarding the guns, Chowdury testified both men
carried guns.  William Wolfe, a customer in the store at the time of the
robbery who has worked as a law enforcement officer and instructor, testified
he saw both guns.  He described the gun used by the man at the cash
register as having a Apearl handle@ and Asilver in nature.@  He described the gun used by the man
at the entry door as a Ablack snub-nosed,
short, brown-handled.@ He testified both guns entered into
evidence looked like the guns he saw the gunmen use during the robbery. 
Moreover, he testified the man at the cash register who was holding the  Asilver@
gun was wearing shorts and had a tattoo on the calf of his leg.  Chris
Maldonado, the Pespi-Cola delivery man, testified he
saw someone with a tattoo on the right calf outside the store shortly before
the robbery, and  Officer Wiesepape testified he
observed a tattoo on the calf of appellant=s right leg. 


 

In addition, Detective Bell testified a
Achrome semi-automatic,
small caliber handgun@ fell out of a black ski mask he found on
the trail.  Javier Flores  testified he
found saliva on the lower lip of the two black ski masks given to him by the
Navasota Police Department.  He recovered enough DNA to perform a comparison
on one of the masks.  Based on the comparison, he excluded Sanders as the
donor of the saliva but he could not exclude appellant.  Officer Bailey
also  testified he found a blue revolver on or
near the trail.  William Sorrow, a firearms examiner for the Texas
Department of Public Safety Crime Laboratory, testified the bullets submitted
for testing were fired from the blue revolver because they were of the same
caliber and shared the class and characteristics of projectiles fired from the
blue revolver.

Accordingly, the State=s evidence
established a sufficient connection between the guns, appellant, and this
offense.  The lack of positive identification affected only the weight,
not admissibility of the guns as evidence. Foster, 779
S.W.2d at 861. Accordingly, the trial court did not abuse its discretion
by admitting the guns into evidence.  See id.; Price
v. State, No. 05-95-01855-CR, 1998 WL 310504, at *2B3 (Tex.
App.CDallas, June 15, 1998,
no pet.) (not designated for publication)
(finding trial court did not abuse its discretion in admitting into evidence
guns used in a grocery store aggravated robbery where witness described three
guns as Alooking like a sawed off
shotgun,@ a Along gun,@ and a Ashort gun@).  

We overrule appellant=s third issue and affirm the trial court=s judgment.

 

 

 

/s/       
Charles W. Seymore

Justice

 

Judgment rendered and Memorandum
Opinion filed May 31, 2007.

Panel consists of Justices Frost,
Seymore, and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).         















[1]  The First Court of Appeals dismissed appellant=s first appeal for want of jurisdiction because the
notice was not timely filed.  Wilkerson v. State,
No. 01-00-00226-CR, 2000 WL 768846, at *1 (Tex. App.CHouston [1st Dist.]
June 15, 2000, no pet.) (mem. op.).  Thereafter, appellant successfully
pursued a writ of habeas corpus; the Court of Criminal Appeals granted
appellant an out-of-time appeal.  Ex parte Wilkerson, No. 74887, 2004 WL 231504, at *5 (Tex. Crim.
App. Feb. 4, 2004).  Appellant filed this appeal pursuant to the
out-of-time appeal granted by the Court of Criminal Appeals.  

 





[2]  The State did not file a responsive brief.