Affirmed and Memorandum Opinion filed July 19, 2007








Affirmed and Memorandum Opinion filed July 19, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-00258-CR

_______________

 

TERRY DEMON MCCLINTOCK, JR., Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                          


On Appeal from the 337th District Court

Harris County, Texas

Trial Court Cause No. 1029173

                                                                                                                                           


 

M E M O R A N D U M   O P I N I O N

A jury
found appellant, Terry Demon McClintock, Jr., guilty of murder and sentenced
him to thirty-one years= confinement.  In two issues, he contends the evidence is
legally and factually insufficient to support the conviction.  Our disposition
is based on clearly settled  law.  Accordingly,  we issue this memorandum
opinion and affirm.  See Tex. R.
App. P. 47.4.

I. Background








Appellant
was accused of shooting and killing Danielle Nicole Bonner at her duplex  in
Houston on June 1, 2005.  At trial, witnesses testified that they observed
appellant and his girlfriend, Lena Bryant, arguing with Bonner who was standing
in the front doorway of her residence.  At some point, appellant retrieved a
handgun either from his pants or his car and entered Bonner=s duplex.  A few seconds later,
witnesses heard a Apop@ that sounded like a gunshot inside the duplex.  Shortly
thereafter, appellant ran out of the duplex and entered an Impala on the driver=s side, and he and Bryant drove
away.  Appellant and Bryant returned a minute later, and appellant reentered
Bonner=s duplex.  Moments later, appellant
exited the duplex, holding Bonner=s cordless phone and exclaiming, AOh, my God, she=s dead.@  Appellant and Bryant returned to
the Impala.  This time Bryant took the wheel, and they drove away.  Several
minutes later, appellant and Bryant returned to Bonner=s residence a third time.  At this
point, Houston police officers took them into custody.  Police entered   Bonner=s residence and found her lying in a
large pool of blood. A 22-caliber chrome pistol was lying near her body.  

The jury
found appellant guilty of murder and sentenced him to thirty-one years= confinement.

II. Standard of Review

In two
issues, appellant challenges legal and factual sufficiency of the evidence to
support the jury=s verdict because there is no direct evidence he committed
murder.  The standard of review for a criminal case comprised wholly of
circumstantial evidence is the same as in cases where the State has presented
direct evidence of guilt.  Kutzner v. State, 994 S.W.2d 180, 184 (Tex.
Crim. App. 1999); King v. State, 895 S.W.2d 701, 703 (Tex. Crim. App.
1995); Wilson v. State, 863 S.W.2d 59, 65 (Tex. Crim. App. 1993).








In determining legal sufficiency,  we view all the evidence
in the light most favorable to the verdict and then determine whether a
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319
(1979); Salinas v. State, 163 S.W.3d 734, 737 (Tex. Crim. App. 2005).  The
jury, as the sole judge of the credibility of the witnesses, is free to believe
or disbelieve all or part of a witness=s testimony.  Jones
v. State, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998).  We do not engage in a
second evaluation of the weight and credibility of the evidence, but only
ensure the jury reached a rational decision.  Muniz v. State, 851 S.W.2d
238, 246 (Tex. Crim. App. 1993); Harris v. State, 164 S.W.3d 775, 784
(Tex. App.CHouston [14th Dist.] 2005, pet. ref=d).

In determining factual sufficiency, we view all the
evidence in a neutral light and set aside the verdict Aonly if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.@  Cain v. State,
958 S.W.2d 404, 407 (Tex. Crim. App. 1997) (quoting Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996)).  Before we may reverse for factual
insufficiency, we must first conclude, with some objective basis in the record,
that the great weight and preponderance of the evidence contradicts the jury=s verdict.  Watson
v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).  When reviewing
evidence, we must avoid intruding on the fact-finder=s role as the sole
judge of the weight and credibility of the witness testimony.  Johnson v.
State, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000).  We do not re-evaluate the
credibility of witnesses or weight of the evidence, and will not substitute our
judgment for that of the fact finder.  Johnson v. State, 967 S.W.2d 410,
412 (Tex. Crim. App. 1998).

III. Discussion

A person
commits murder if he (1) intentionally or knowingly causes the death of an
individual or (2) intends to cause serious bodily injury and commits an act
clearly dangerous to human life that causes the death of an individual.  Tex. Penal Code Ann. ' 19.02(b)(1)-(2) (Vernon 2003).








Appellant
contends there was no direct evidence that he murdered Bonner.  However, it is
well established that circumstantial evidence may be sufficient to sustain the jury=s verdict.  See Kutzner, 994
S.W.2d at 184; Smith v. State, 965 S.W.2d 509, 515 (Tex. Crim. App.
1998).  For purposes of proving guilt beyond a reasonable doubt, direct and
circumstantial evidence are equally probative.  See McGee v. State, 774
S.W.2d 229, 238 (Tex. Crim. App. 1989).  Moreover, in a case that consists
entirely of circumstantial evidence, it is not necessary for every inculpatory
fact to point directly and independently to the accused; it is enough if the
jury=s conclusion is warranted by the
cumulative force of all incriminating evidence.  See Johnson v. State,
871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

Here,
the State presented ample evidence to support the conviction.  The State
produced two witnesses who positively identified appellant at the scene.  These
witnesses testified that they watched from across the street at a distance of
approximately 150 feet.  Appellant and Bryant were arguing with Bonner, who was
standing in her front doorway, before appellant entered her duplex, carrying a
small, black gun.  A few seconds later, these witnesses heard a Apop@ that sounded like a gunshot. 
Appellant was then seen running out of the victim=s duplex.  Appellant and Bryant left
the scene in an Impala, driven by appellant.  The jury could rationally
conclude from these facts that appellant shot Bonner inside her duplex.

 Apparently,
they drove around the block because they returned to Bonner=s duplex a minute later.  One of the
witnesses testified that neighborhood children were walking toward Bonner=s duplex when appellant and Bryant
returned.  The witness heard appellant tell the children Ato go to their friend=s house.  Go next door.  Don=t come in.@  The jury could have reasonably
concluded that appellant instructed the children not to enter the duplex
because they would find Bonner with a gunshot wound.  Appellant re-entered
Bonner=s duplex, exited a few moments later
holding the victim=s cordless phone, and exclaimed, AOh, my God, she=s dead.@

Both
witnesses testified that appellant and Bryant returned to the Impala.  This
time Bryant was behind the wheel.  Apparently, they circled the block again and
returned to the victim=s duplex a few minutes later.  Appellant and Bryant were then
seen re-entering the victim=s duplex.  The police, fire department, and an ambulance
arrived shortly thereafter.








There
were discrepancies in the testimony of the two witnesses.  First, each
testified that the gun was black when it was, in fact, chrome.  However, the
defense conceded that the gun was small and the witnesses viewed the events
from across the street.  Further, appellant was wearing a black shirt, which
may have reflected onto the gun.  In addition, shadows may have affected the
witnesses= perceptions of the gun. A jury could have reasonably inferred that a
chrome gun appeared to the witnesses to be black when viewed next to a black
shirt at a distance.

Second,
one witness testified appellant retrieved the gun from his pants, while the
other testified that appellant retrieved the gun from the Impala.  However, the
jury heard all of the evidence and could decide what weight to give the
witnesses= testimony in light of this conflict.  Unless the available record
clearly reveals a different result is appropriate, we must defer to the jury=s determination concerning what
weight to give contradictory testimony because resolution often turns on an
evaluation of credibility and demeanor of the witnesses= testimony.  See Watson, 204
S.W.3d at 414; Johnson, 23 S.W.3d at 8.  

Third,
one witness testified she saw and heard appellant instruct the neighborhood
children to not enter Bonner=s duplex, while the other testified that he did not see the
children.  Again, this is not such a pivotal detail that conflicting testimony
creates a reasonable doubt about appellant=s guilt. 

Bonner=s estranged husband, Cedric Maddox,
testified that following a telephone call from his daughter, he went to Bonner=s duplex.  When Maddox arrived,
appellant yelled out to him, ACedric, I just got here.  She was already dead when I got
here.@  However, appellant=s exclamation was contradicted by the
testimony of the witnesses who saw appellant and Bryant arguing with the victim
shortly before they heard the Apop@ of a gunshot and observed appellant=s multiple entries into Bonner=s residence. 








The
State also presented the testimony of Jason Schroeder, a forensic chemist with
the Harris County Medical Examiner=s Office.  Schroeder testified that
appellant had no gunshot residue on his hands at the time he was tested. 
However, Schroeder also testified gunshot residue Asloughs off@ easily through normal hand motions
within four to six hours of discharging a gun.  Schroeder suggested that
appellant could have washed his hands, wiped them on some object, or
transferred the gunshot residue through sweat onto another object.  These
actions could explain the absence of gunshot residue on his hands.  Moreover,
there was evidence that Bryant had gunshot residue on her right hand. 
According to Schroeder, this transfer could have occurred at the steering wheel
of the Impala when Bryant drove away from the victim=s duplex the second time after
appellant had served as the driver the first time.

Appellant
argues that Bonner likely committed suicide because she had a high gunshot
residue finding on her left hand and a low gunshot residue finding on her
right.  However, Dr. Morna Gonsoulin, Assistant Medical Examiner at the Harris
County Medical Examiner=s Office, testified that the gunshot wound was inconsistent
with a typical self-inflicted gunshot wound based on the large area of
stippling (or gunpowder burned into the victim=s skin) around the point of entry. 
According to Dr. Gonsoulin, the gun was fired at a distance of six to eighteen
inches from Bonner.  The bullet entered near the armpit on the left side, which
may explain the higher gunshot residue finding on her left hand.  Dr. Gonsoulin
testified the bullet=s path was left to right, front to back, and downward making
it an Ainconvenient@ location for a self-inflicted
gunshot wound.








In sum,
examining the evidence in the light most favorable to the verdict, we conclude
that a reasonable jury could have found that appellant intentionally or
knowingly caused the Bonner=s death or intended to cause serious bodily injury and
committed an act clearly dangerous to human life that caused her death. 
Viewing the evidence in a neutral light, we further conclude that the jury=s verdict is not contrary to the
great weight and preponderance of the evidence and find the evidence factually
sufficient. 

Accordingly,
we overrule appellant=s two issues and affirm the judgment of the trial court.

 

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered and Memorandum
Opinion filed July 19, 2007.

Panel consists of Justices Frost,
Seymore, and Guzman.

Do Not Publish C Tex.
R. App. P. 47.2(b).