Affirmed and Memorandum Opinion filed February 19, 2008








Affirmed and Memorandum Opinion filed February 19, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00544-CR

____________

 

STEVEN ALLEN NELSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 268th
District Court

Fort Bend County, Texas

Trial Court Cause No. 41,770

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Steven Allen Nelson, appeals his conviction for
evading arrest in a motor vehicle.  Tex.
Penal Code Ann. ' 38.04 (Vernon 2003).  After pleading not
guilty, appellant was found guilty as charged by a jury.  The trial court
sentenced appellant to confinement for 180 days in the state jail, probated for
two years.  In three issues, appellant argues the evidence is legally and
factually insufficient and that the trial court erred when it denied his motion
to quash his indictment.  We affirm.








Factual and Procedural Background

On February 16, 2005, Officer Caleb Rule of the Missouri
City Police Department was on traffic patrol in his marked police cruiser. 
According to Officer Rule, the police cruiser was equipped with emergency
lights in the front grill and with a video recording unit.  This video recorder
is designed to come on immediately when the cruiser=s emergency lights
are activated, but Officer Rule testified this particular recorder had problems
and would frequently take one or more seconds after the lights had been
activated to start recording. Officer Rule also testified that the camera is
turned slightly to the right so that everything an officer can see during a
chase is not necessarily visible on the videotape.[1] 
On February 16, Officer Rule, who had been with the Missouri City Police only
two months, was accompanied by his field training officer, Officer Sal Luera.

Officer Rule was stopped at the traffic light on Cartwright
Road preparing to turn onto Murphy Road when he first noticed appellant=s vehicle.  As
appellant was turning left from Murphy Road onto Cartwright Road, Officer Rule
noticed that the vehicle registration and inspection on appellant=s vehicle were
both expired.  Officer Rule testified that after he made eye contact with
appellant, he turned his police cruiser around to initiate a traffic stop of
appellant.  In order to make his turn safely, Officer Rule was not able to
activate his emergency lights until after he had completed the turn and was
following appellant on Cartwright Road.  Officer Rule testified that despite
having made eye contact with him, appellant did not stop but instead
accelerated his vehicle. 








According to Officer Rule, appellant then ran through a red
light when he turned left onto Quail Village.[2] 
At that point, Officer Rule activated his siren and continued to pursue
appellant through the intersection.  Appellant then turned right onto Barcelona
Court, which was actually a dead-end driveway for a group of town homes, with
Officer Rule pulling in behind appellant. Officer Rule testified that he was
never directly behind appellant=s vehicle until this point in the
pursuit.  Once he stopped his vehicle, appellant immediately got out of his car
and began to run through the town home complex as Officer Rule yelled for him
to stop and pursued him on foot.  Officer Rule lost sight of appellant and
called for assistance from other officers.  Other Missouri City police officers
eventually located appellant a few blocks away from his vehicle, hiding behind
a dumpster in a restaurant parking lot.  Officer Rule identified appellant as
the person he had seen driving the vehicle.  The police also found the keys to
the abandoned vehicle on appellant.  The police also learned that the vehicle
was registered to appellant and that appellant had multiple outstanding traffic
warrants totaling approximately $2,500 in fines at the time he was arrested. 
Officer Rule testified that the entire chase, from the moment he initiated his
pursuit until appellant was captured behind the dumpster, took approximately
two minutes.

The video tape from Officer Rule=s police cruiser
was entered into evidence.  However, the video unit and the tape did not start
until Officer Rule was driving through the intersection of Cartwright and Quail
Village or slightly after.  In addition, the first time any part of appellant=s vehicle is
visible on the videotape is after Officer Rule turns onto Barcelona Court
moments before appellant stopped his vehicle at the dead-end.  The videotape
does show appellant exiting his vehicle and running away as Officer Rule is
pulling in behind appellant=s vehicle.








Officer Luera also testified at appellant=s trial.  Officer
Luera confirmed that he was riding with Officer Rule on February 16, 2005. 
According to Officer Luera, after Officer Rule turned around and was pulling in
behind appellant=s vehicle, appellant took off at a high
rate of speed.  Officer Luera testified that Officer Rule turned on his
emergency lights at that point.  Officer Luera also testified they activated
their siren once appellant had run the red light while turning onto Quail
Village.  Officer Luera also testified that once appellant had stopped his
vehicle at the dead-end, he exited his vehicle and took off running. 

Robert Sullivan resided in one of the town homes where
appellant abandoned his vehicle and fled from the police on foot.  Mr. Sullivan
was working in his garage on February 16, 2005 when he observed appellant=s vehicle come
roaring up Barcelona Court faster than he had ever before seen anyone drive on
Barcelona Court.  Mr. Sullivan also testified that he saw a police cruiser
right behind appellant=s vehicle.  While Mr. Sullivan said he
could easily tell it was a Missouri City Police cruiser based on its markings,
he could not tell if its emergency lights were on and he did not remember a
siren.

The final witness for the prosecution was Officer Oswaldo
Flores.  Officer Flores testified he responded to a call for assistance from
Officer Luera, who reported they were pursuing a fleeing suspect.  Officer
Flores eventually located appellant hiding behind the restaurant dumpster.

Appellant testified in his own defense.  Appellant denied
he was aware the police were behind him until he had stopped his vehicle on
Barcelona Court.  Appellant denied seeing the police cruiser or hearing a
siren.  Appellant admitted that once he saw the police pulling up behind him,
he panicked because of his outstanding warrants and ran from the officers.

 

 








Discussion

A.      Is the
Evidence Legally Sufficient to Support Appellant=s Conviction?

In his first issue, appellant contends the evidence
supporting his conviction is legally insufficient to establish that he
intentionally fled from the police because the evidence was insufficient to
establish that he was aware the police were pursuing him until after he had
already stopped his vehicle at the end of the townhouse driveway.  We disagree.

1.       The
Standard of Review








In a legal sufficiency review, we view all the evidence in
the light most favorable to the verdict and determine whether any rational
trier of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct.
2781, 2789, 61 L.Ed.2d 560 (1979); Salinas v. State, 163 S.W.3d 734, 737
(Tex. Crim. App. 2005).  The jury, as the sole judge of the credibility of the
witnesses, is free to believe or disbelieve all or part of a witness=s testimony.  Jones
v. State, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998).  The jury may
reasonably infer facts from the evidence presented, credit the witnesses it
chooses to, disbelieve any or all of the evidence or testimony proffered, and
weigh the evidence as it sees fit.  Sharp v. State, 707 S.W.2d 611, 614
(Tex. Crim. App. 1986).  The jury can infer intent from other facts in the
record.  See Manrique v. State, 994 S.W.2d 640, 649 (Tex. Crim. App.
1999).  Intent may be inferred from the words and the conduct of the accused
and the surrounding circumstances.  Guevara v. State, 152 S.W.3d 45, 49B50 (Tex. Crim.
App. 2004).  Reconciliation of conflicts in the evidence is within the jury=s discretion, and
such conflicts alone will not call for reversal if there is enough credible
evidence to support a conviction.  Losada v. State, 721 S.W.2d 305, 309
(Tex. Crim. App. 1986).  An appellate court may not re-evaluate the weight and
credibility of the evidence produced at trial and in so doing substitute its
judgment for that of the fact finder.  King v. State, 29 S.W.3d 556, 562
(Tex. Crim. App. 2000).  Inconsistencies in the evidence are resolved in favor
of the verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App.
2000).  Through a legal sufficiency review, we ensure only that the jury
reached a rational decision.  Muniz v. State, 851 S.W.2d 238, 246 (Tex.
Crim. App. 1993); Harris v. State, 164 S.W.3d 775, 784 (Tex. App.CHouston [14th
Dist.] 2005, pet. ref=d).

2.       The
Evidence is Legally Sufficient








In order to prove appellant evaded detention with a motor
vehicle, the State had to prove appellant intentionally fled from Officers Rule
and Luera while using a motor vehicle.  Tex. Penal Code Ann. ' 38.04(a), (b)(1)
(Vernon 2003).[3] 
In addition, section 38.04(b)(1), which elevates the punishment level for the
offense defined in Section 38.04(a) when a motor vehicle is used, requires only
that a motor vehicle be used at some time during the commission of the
offense.  Hobbs v. State, 175 S.W.3d 777, 779 (Tex. Crim. App. 2005). 
In this case, the jury heard the pursuing officers testify that they observed
appellant=s vehicle traveling without a valid registration and
inspection.  Officer Rule testified that after making eye contact with
appellant, appellant accelerated his speed away from the police cruiser.  The
jury also heard Officer Rule testify that he turned on his emergency lights
after completing the turn to pursue appellant and activated his siren after
appellant ran through a red light.  While the videotape does not show appellant=s vehicle until
the very end of the pursuit, the jury heard both officers explain there was a
short delay between activation of the cruiser=s emergency lights
and the commencement of recording.  They also heard Officer Rule=s testimony that
the videotape does not show all that he was able to observe while pursuing
appellant.  The jury also heard Mr. Sullivan testify that he saw appellant
drive down the town home driveway faster than he had ever seen anyone travel
that way before and that the police cruiser was following close behind
appellant.  In addition, the jury heard the officers testify that appellant
immediately exited his vehicle and fled on foot from the police as they pulled
up directly behind his vehicle.  The videotape also showed appellant jumping
out of his vehicle and running as the police cruiser pulled up.  Finally, the
jury heard Officer Flores testify that he found appellant hiding behind a
restaurant dumpster a short distance from his abandoned vehicle.  When viewed
in a light most favorable to the verdict, a rational trier of fact could have
concluded from this evidence that appellant, using a motor vehicle, 
intentionally fled from a person he knew was a peace officer attempting
lawfully to detain or arrest him.  Therefore, the evidence is legally
sufficient to support appellant=s conviction.   We overrule appellant=s first issue.

B.      Is the
Evidence Factually Sufficient to Support Appellant=s Conviction?

In his second issue, emphasizing the same points raised
under his legal sufficiency challenge, appellant argues the evidence is
factually insufficient to support the jury=s guilty verdict.

1.       The
Standard of Review

The
evidence may be factually insufficient in two ways.  Prible v. State,
175 S.W.3d 724, 730B31 (Tex. Crim. App. 2005).  First, when considered by itself,
evidence supporting the verdict may be so weak the verdict is clearly wrong and
manifestly unjust.  Id.  Second, where the evidence both supports and
contradicts the verdict, the contrary evidence may be strong enough that the
beyond-a-reasonable-doubt standard could not have been met.  Id. 
Appellant contends the evidence is insufficient when measured under either
standard.








In a
factual sufficiency review, we consider all the evidence in a neutral light.  Id. 
Our
evaluation of that evidence should not intrude upon the fact finder=s role as the sole
judge of the weight and credibility given to any witness=s testimony. Cain
v. State, 958 S.W.2d 404, 408B09 (Tex. Crim.
App. 1997).  The jury may
believe or disbelieve all or part of any witness=s testimony. Jones
v. State, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998).  Reconciliation of
any conflicts in the evidence falls within the exclusive province of the jury. Heiselbetz
v. State, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995).  Finally, our analysis must consider
the evidence appellant claims is most important in allegedly undermining the
jury=s verdict.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

2.         The Evidence is Factually
Sufficient








In his
factual sufficiency challenge, appellant points to the following evidence as
undermining the jury=s guilty verdict: (1) the eye contact between Officer Rule
and appellant occurred before Officer Rule had activated his emergency lights;
(2) Officer Rule did not mention making eye contact with appellant in his
offense report; (3) the location of the police cruiser=s emergency lights behind the front
grill rather than on the roof, which appellant contends limits their
visibility; (4) the lack of evidence as to appellant=s actual speed during the pursuit;
(5) the officers= testimony that the videotape recorder starts when the
cruiser=s emergency lights are activated; (6)
the point in the pursuit when the videotape actually starts; (7) the lack of
the sound of a siren on the videotape;[4] (8) the point
in the pursuit when Officer Rule activated the siren; (9) the fact that
appellant=s vehicle does not appear in the videotape until near the end of the
videotape; (10) the fact appellant=s body does not appear on the
videotape until he is seen leaping out of his vehicle and running from the
police officers; (11) the short distance involved in the pursuit; (12) Mr.
Sullivan=s testimony that he could not tell if
the police cruiser=s emergency lights were on and he did not remember hearing a
siren; and (13) Officer Rule=s testimony that he was never directly behind appellant=s vehicle until the very end of the
pursuit.  The jury heard all the evidence, including the evidence cited by
appellant, and still determined that appellant intentionally fled from officers
Rule and Luera using a motor vehicle and rejected appellant=s view of the
evidence.  The jury is the exclusive judge of the credibility of the witnesses
and the weight to be given their testimony.  Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000).  The jury=s decision is not manifestly unjust merely because the jury resolved
conflicting views of the evidence in favor of the State.  Cain, 958
S.W.2d at 410.  The jury was free to reject all of the defensive evidence and
theories if it so chose.  See Davis, 831 S.W.2d at 842.  Therefore, the
fact that the jury did so here does not render the evidence factually
insufficient.  We overrule appellant=s second issue.

C.      Did the
Trial Court Err When It Denied Appellant=s Motion to Quash
His Indictment?

In his third issue, appellant contends the trial court
erred when it denied his motion to quash his indictment.  In appellant=s view, the
indictment was inadequate because it did not allege a necessary element of the
Evading Arrest statute.

1.       The
Standard of Review

The adequacy of an indictment is a question of law subject
to de novo review.  Holley v. State, 167 S.W.3d 546, 547 (Tex.
App.CHouston [14th
Dist.] 2005, pet. ref=d).

2.       The Trial
Court Properly Denied Appellant=s Motion to Quash
His Indictment

Section 38.04 of the Penal Code provides, in part:

(a) A person commits an offense if he intentionally flees from a person
he knows is a peace officer attempting lawfully to arrest or detain him.

(b) An offense under this section is a Class B misdemeanor, except that
the offense is:

(1) a state jail felony if the actor uses a vehicle while the actor is
in flight and the actor has not been previously convicted under this section[.] 








 

Tex.
Penal Code Ann. ' 38.04 (Vernon 2003).  Citing the Court of
Criminal Appeals= opinion in Calton v. State,
appellant asserts the indictment against him was inadequate because the State
did not plead that appellant had not been previously convicted under this
section of the Penal Code.  Calton v. State, 176 S.W.3d 231 (Tex. Crim.
App. 2005).

Initially, we note appellant=s reliance on Calton
is misplaced.  In Calton, the State alleged third-degree felony
evading arrest under section 38.04(b)(2), and the Court of Criminal Appeals
held that the State must plead and prove the existence of a prior conviction
under the evading arrest statute as an element of the crime of third-degree
felony evading arrest.  Id. at 234.  However, this case involves
a charge of evading arrest with a motor vehicle, a state jail felony under
section 38.04(b)(1) and does not involve a prior evading arrest conviction. 
Therefore, Calton is distinguishable and the Court of Criminal Appeals= holding does not
control the outcome of this issue. 

This court has addressed this issue before.  In Holley,
we pointed out that an indictment must, by direct and positive averments,
allege all of the constituent elements of the criminal offense sought to be
charged.  Holley, 167 S.W.3d at 548.  We then defined what constitutes
the elements of an offense: A(A) the forbidden conduct; (B) the
required culpability; (C) any required result; and (D) the negation of any
exception to the offense.@  Id. quoting Tex. Penal Code ' 1.07(a)(22).  We
then held that A[t]he nonexistence of prior convictions
under section 38.04 does not fall into any of these categories@ and therefore is
not an element of the offense that must be alleged in the indictment.  Id. 
Because the nonexistence of a prior evading arrest conviction is not an element
of the offense of state jail felony evading arrest, the trial court properly
denied appellant=s motion to quash his conviction.  We
overrule appellant=s third issue.

 








Conclusion

Having overruled each of appellant=s issues on
appeal, we affirm the judgment of the trial court.

 

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed February 19, 2008.

Panel consists of
Chief Justice Hedges, Justice Anderson, and Senior Justice Price.[5]

Do Not Publish C Tex. R. App. P. 47.2(b).

 









[1]  According to Officer Luera, police policy dictates
that when making a traffic stop, officers are required to slant their vehicles
to the left to block oncoming traffic and to place the engine block between the
officer and driver of the stopped vehicle, thus the reason for the rightward slant
of the video camera.





[2]  There is some confusion in the record as to the name
of this street.  Officer Rule and Mr. Sullivan testified that the name was
Quail Village while appellant testified he was not certain of the name but
thought it was Quail Valley. 





[3]  Tex. Penal Code Ann. ' 38.04 (Vernon 2003) provides in part:

 

(a) A person commits an offense if he intentionally
flees from a person he knows is a peace officer attempting lawfully to arrest
or detain him.

(b) An offense under this section is a Class B
misdemeanor, except that the offense is:

(1) a state jail felony if the actor uses
a vehicle while the actor is in flight and the actor has not been previously
convicted under this section[.] 





[4]  While appellant emphasizes the absence of a siren on
the videotape, Officer Rule testified there was no sound at all on the
videotape.





[5]  Senior Justice Frank C. Price sitting by assignment.