**Affirmed and Memorandum Opinion filed May 10, 2012.**



**In The**

# Fourteenth Court of Appeals

_____

**NO. 14-11-00422-CR**

_____

**EMMANUEL MAYWEATHER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 262nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 1274559**

## MEMORANDUM OPINION

Appellant, Emmauel Mayweather, was charged by indictment with the felony offense of possession with intent to deliver a controlled substance, namely, cocaine, weighing at least 400 grams. *See* Tex. Health & Safety Code § 481.112(a) & (f) (West 2010). The jury found appellant guilty and assessed punishment at fifteen years' confinement and a $5,000 fine. Tex. Health & Safety Code § 481.112(f). We affirm.

### Factual and Procedural Background

Late on the evening of August 16, 2010, Syed Mohiuddin, a cab driver for Yellow Cab, accepted a dispatch to a motel on South Main Street in Houston. A short while after

Mohiuddin arrived at the hotel, two men walked out to the cab. Mohiuddin identified the two men as appellant and appellant's co-defendant at trial, a Mr. Norman. Mohiuddin testified that appellant walked out carrying a "laptop bag" or an "office bag."

When appellant and Norman entered his cab, Mohiuddin asked their destination. Appellant told Mohiuddin he did not know their destination yet and he proceeded to make telephone calls. Appellant eventually told Mohiuddin to just drive south on Interstate 45. As Mohiuddin drove south on Interstate 45, appellant directed him to exit the freeway and pull into the parking lot of a tattoo parlor. Mohiuddin pulled into the parking lot and parked his cab facing the tattoo parlor.

Both appellant and Norman got out of the cab. They paid their fare and appellant started walking toward a parked, red SUV. Norman got back into the cab and told Mohiuddin to wait as they would need a ride back to the motel. Norman remained inside the cab. Mohiuddin watched as appellant reached the red SUV and commenced a conversation with a Hispanic male. Mohiuddin testified he saw appellant taste something and he believed they were making some kind of deal.

While watching appellant at the red SUV, Mohiuddin saw a silver Toyota Corolla pull into the parking lot and park next to his cab. Mohiuddin moved his cab and parked so that it was facing the street rather than the tattoo parlor. According to Mohiuddin, he did this because he felt something was not right and he wanted to be able to exit the parking lot and reach the street quickly if something went wrong.

Soon after Mohiuddin moved his cab, appellant, carrying the laptop bag, ran back and got into the cab, telling Mohiuddin, "let's go." Mohiuddin drove out of the parking lot and onto the feeder road. Almost immediately after he pulled out of the parking lot, the silver Toyota pulled in front of Mohiuddin's cab. At the same time, Mohiuddin saw the red SUV pull up behind him. Now blocked from proceeding on the feeder road,

2

Mohiuddin saw a man get out of the silver Toyota holding a gun. Now scared of what might be about to happen, Mohiuddin pulled his cab back into the tattoo parlor parking lot; the Toyota and SUV followed. At that point, Mohiuddin quickly drove out of the parking lot again. Mohiuddin then ran a red light in an effort to get away from the Toyota and red SUV. As he drove away, Mohiuddin heard shooting and a bullet hit the driver's side door of his cab.

Mohiuddin drove up onto Interstate 45 heading south. In his effort to elude his pursuers, Mohiuddin drove at speeds up to one hundred miles per hour. The Toyota and red SUV continued to follow Mohiuddin and the occupants continued to shoot at his cab. They eventually hit one of the cab's rear tires. Now driving with a flat tire, Mohiuddin realized he was short on gas and there was little chance of avoiding the pursuers if he continued south on Interstate 45. When there was a lull in the shooting, Mohiuddin stepped on the brakes and came to a stop on the freeway, his pursuers drove past. At that point, Mohiuddin turned around and proceeded to drive north on the south bound side of the freeway.

Once Mohiuddin was driving the wrong way on the freeway, appellant, now holding a gun, ordered Mohiuddin to get off the freeway right away. Mohiuddin exited the freeway at the earliest opportunity and dropped appellant and Norman off at an apartment complex. Mohiuddin then drove to a nearby What-A-Burger where he asked the manager to call the police.

Sandra Coutee was a resident in a second floor apartment at The Lakes apartment complex. Coutee had returned from work about 11:30 on the evening of August 16, 2010. She had been home a short while when she heard loud, persistent knocking at the door of a nearby vacant apartment. Coutee looked through the peephole of her apartment door and saw appellant, carrying a black laptop bag, standing outside the vacant apartment. Appellant asked her the name of the apartments. Coutee did not answer, instead she

3

called the police. Coutee heard appellant tell someone downstairs that she was calling the police.

Having already received reports about the events on the Interstate 45 freeway and information that men matching the description of those involved in those events were present at Coutee's apartment complex, the police conducted a ground and air search. Using an infrared camera, the Houston Police Department's helicopter unit detected a heat source that appeared out of the ordinary for that location. The helicopter unit directed police on the ground to that location. The police officers on the ground found two men, appellant and Norman, hiding under a table inside the fenced patio of one of the ground floor apartments at the complex. The officers took the two men into custody. The police also found a black bag near the two men. A search of the bag revealed two loaded handguns and a single, plastic-wrapped brick of compressed powder. The police officers field tested the powder and it tested positive for cocaine. The Houston Police laboratory eventually confirmed the compressed powder was cocaine and determined that it weighed just over 1009 grams.

During appellant's trial, Officer Kurt Rogers testified. At the time of appellant's trial, Officer Rogers had served as a Houston police officer for 31 years. While Officer Rogers had spent most of his career as a patrol officer, he did serve over three years in a tactical unit which conducted various investigations, including narcotics investigations. Officer Rogers was one of the officers dispatched to The Lakes apartments and he was involved in the search for, and arrest of, appellant and Norman. Officer Rogers testified that, in his experience, a kilogram of cocaine sells on the street for an amount between $20,000 and $25,000. Officer Rogers also testified that, based on his training and experience, a kilogram is not purchased for personal use, but for the purpose of distribution. Finally, Officer Rogers testified that, based on his training and experience, personal use purchases are along the lines of a couple of grams or a single ounce.

4

The jury found appellant guilty and assessed his punishment at fifteen years' confinement and a $5,000 fine.   This appeal followed.

**DISCUSSION**

In a single issue on appeal, appellant contends the evidence is insufficient to prove intent to deliver.

## I.   The Standard of Review and Applicable Law

In a sufficiency review, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.   *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality opinion); *Pomier v. State*, 326 S.W.3d 373, 378 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Our review includes both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence.   *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).   Direct and circumstantial evidence are treated equally.   *Id*.   The jury, as the sole judge of the credibility of the witnesses, is free to believe or disbelieve all or part of a witness's testimony.   *Jones v. State*, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998).   The jury may reasonably infer facts from the evidence presented, credit the witnesses it chooses to, disbelieve any or all of the evidence or testimony proffered, and weigh the evidence as it sees fit.   *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).   Reconciliation of conflicts in the evidence is within the jury's discretion, and such conflicts alone will not call for reversal if there is enough credible evidence to support a conviction.   *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986).   An appellate court may not re-evaluate the weight and credibility of the evidence produced at trial and in so doing substitute its judgment for that of the fact finder.   *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).   Inconsistencies in the evidence are resolved in favor of the verdict.   *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).   We do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure the

5

jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993); *Harris v. State*, 164 S.W.3d 775, 784 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Curry*, 30 S.W.3d at 404. "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof, or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villareal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

To demonstrate possession of cocaine with intent to deliver, the State is required to show that (1) appellant knowingly or intentionally; (2) possessed; (3) cocaine; (4) in an amount greater than four hundred grams; (5) with the intent to deliver the cocaine. *See* Tex. Health & Safety Code § 481.112(a) & (f). In a possession with intent to deliver case, the "intent to deliver" element may be proved by circumstantial evidence, including evidence that the accused possessed the contraband and the quantity of the drugs possessed. *Moreno v. State*, 195 S.W.3d 321, 325 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). An oral expression of intent by the defendant is not required. *Id.* at 326. Instead, intent can be inferred from the acts, words, and conduct of the defendant. *Id.* Factors that a reviewing court may consider in determining intent to deliver include (1) the nature of the location at which the defendant was arrested, (2) the quantity of the contraband in the defendant's possession, (3) the manner of the packaging of the contraband, (4) the presence of or lack of narcotics paraphernalia for either use or sale, (5) large amounts of cash, or (6) the defendant's status as a narcotics user. *Id.* at 325. The quantity of the factors implicated in the analysis is not as important as the logical force the factors have in establishing the elements of the offense. *Id.* at 326. Finally, expert

6

testimony by experienced law enforcement officers may be used to establish a defendant's intent to deliver. *Id.*

## II. Analysis

In his single issue on appeal, appellant asserts we should reverse his conviction for possession with the intent to distribute because, according to appellant, the only evidence supporting his conviction was the quantity of cocaine. While it is true that some of the factors listed above are not present here, we disagree that, when viewed in the light most favorable to the verdict, the evidence is insufficient to support appellant's conviction.

The evidence established that once appellant got into Mohiuddin's cab, he did not know his destination. Instead, appellant made some telephone calls before telling Mohiuddin to just head south on Interstate 45. Once on that highway, appellant directed Mohiuddin to a tattoo parlor parking lot. Once in the parking lot, Mohiuddin observed appellant speaking with another man and that, during the conversation, appellant appeared to taste something. Based on his observations, Mohiuddin believed the two men were making a deal. Appellant eventually ran back to Mohiuddin's cab, got in, and told Mohiuddin to go. This began a car chase with the people appellant met in the tattoo parlor parking lot, a chase that reached speeds up to one hundred miles per hour. In addition, the occupants of the pursuing vehicles began firing at Mohiuddin's cab and appellant momentarily considered firing back. Appellant eventually ordered Mohiuddin to get off the freeway and once he exited, Mohiuddin dropped appellant and Norman at an apartment complex.

The evidence also established that, at the time he was arrested hiding inside an apartment's fenced-in patio, appellant had in his possession a single, plastic-wrapped brick of compressed cocaine powder weighing just over 1009 grams. Officer Rogers testified that, based on his training and experience, the purchase price of this quantity of cocaine

7

was between $20,000 and $25,000.   Officer Rogers also testified that, based on his training and experience, cocaine for personal use was normally bought by the ounce or the gram, and that 1000 grams of cocaine far exceeded the quantity of cocaine a person would retain for personal use and was instead indicative of the intent to distribute.   In addition, at the time appellant was arrested, he had in the same laptop bag with the cocaine, two loaded handguns.   Finally, at the time appellant was arrested, the police did not find any drug use paraphernalia in his possession.

Based on the evidence summarized above, a rational jury could have concluded that appellant knowingly possessed more than 400 grams of cocaine with the intent to distribute it.   *Id.*; *see Hicks v. State*, 255 S.W.3d 351, 355 (Tex. App.—Texarkana 2008, no pet.) (including the existence of a loaded firearm kept in close proximity to the contraband as a factor considered when holding the evidence sufficient to support the defendant's conviction for possession of cocaine with intent to distribute); *see also Robinson v. State*, 174 S.W.3d 320, 331 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (holding that the lack of drug use paraphernalia supported the defendant's conviction for possession with intent to distribute).   Therefore, we hold the evidence is sufficient to support appellant's conviction and overrule appellant's issue on appeal.

## CONCLUSION

Having overruled appellant's issue on appeal, we affirm the trial court's judgment.


/s/      Margaret Garner Mirabal
          Senior Justice

Panel consists of Justices Seymore, Boyce, and Mirabal.[1]

Do Not Publish — TEX. R. APP. P. 47.2(b).

---

[1] Senior Justice Margaret Garner Mirabal sitting by assignment.

8