David **HARRIS**, Appellant

v.

The **STATE** of Texas, Appellee.

No. 14–03–01376–CR.

Court of Appeals of Texas, Houston (14th Dist.).

May 17, 2005.

776

James M. Leitner, Houston, for appellants.

William J. Delmore, III, Houston, for appellees.

Panel consists of Justices ANDERSON, HUDSON, and FROST.

## OPINION

J. HARVEY HUDSON, Justice.

Appellant, David Harris, appeals his conviction for burglary and his sentence of fifteen years' incarceration in the Texas Department of Criminal Justice, Institutional Division. On appeal, appellant claims (1) he was prosecuted and punished in violation of the Double Jeopardy Clause, (2) the trial court erred in denying his motion for a mistrial when the jury was told he previously had been in jail, and (3) the evidence is legally and factually insufficient to support his conviction. We affirm.

The record reflects the complainant, Chanta Flaniken, and appellant had two small children. While there is a dispute regarding whether they enjoyed a common law marriage, it is undisputed they were estranged at the time of the offense. Accordingly, Flaniken lived in an apartment; appellant lived in a house with his grandmother.

On April 18, 2003, Flaniken telephoned appellant and asked if he would "watch the kids" while she went "out" for the evening.

Appellant agreed. Flaniken subsequently dropped off the children at appellant's residence. During the course of the evening, however, appellant began repeatedly calling Flaniken on her cell phone. Appellant also left messages threatening to beat Flaniken if she got home after 1:00 a.m. Flaniken did not return home until well after 1:00 a.m.

At approximately 7:30 a.m., appellant called Flaniken at her apartment and informed her he was coming over. Although Flaniken told him not to come, appellant, nonetheless, arrived outside her apartment a short time later. Appellant started beating on the front door, demanding that Flaniken let him in. Flaniken told appellant she was not going to let him in and went upstairs to her bedroom. Flaniken then "heard the door like it got busted open." Appellant ran upstairs to Flaniken's bedroom. Flaniken attempted to call the police, but appellant snatched the phone from her. Appellant then pushed Flaniken on the bed and said he was going to get a knife.

Flaniken fled down the stairs ahead of appellant, grabbed a knife, and threw it under the stove or couch where appellant could not get it. Flaniken told appellant to leave, but he would not. Appellant then punched her in the shoulder, pushed her on to the couch, and then started choking her.

Officer Antonio Boutte of the Houston Police Department responded to the dispatcher's call of a burglary in progress at Flaniken's apartment. Officer Boutte approached the back door of the apartment, and looking through a window, saw appellant in the act of choking Flaniken. When Officer Bouttee yelled, "Police Department," appellant released Flaniken.

At approximately the same moment, Officer Rodney Jaime of the Houston Police Department was approaching the front door of Flaniken's apartment. Officer Jaime heard what sounded like a struggle and someone screaming inside the apartment. Appellant then opened the front door as if to flee, but when he saw Officer Jaime, he ran back inside.

After appellant was placed in custody, Officer Jaime observed that the interior door frame of the front door was on the floor, which indicated the door had been kicked in. Officer Jaime related that in such circumstances, "The latch usually stays. The door frame usually breaks."

Flaniken told the police appellant had choked her. Officer Bouttee observed that the area around Flaniken's neck was "reddish" and her clothes were "messed up."

## DOUBLE JEOPARDY

In his first point of error, appellant contends the trial court committed reversible error in overruling his plea in bar because he "had already been *prosecuted and punished* for the same conduct under *a separate contempt order* regarding the same conduct, in violation of [his] federal constitutional right against double jeopardy." (Emphasis added). Appellant then alleges in the body of his appellate brief that he was subjected to double jeopardy because he "had been previously prosecuted *for a violation of a family court protective order* for the same conduct under which the appellant was ... prosecuted." (Emphasis added). Citing *Ex parte Rhodes* as authority, appellant presents his supplication for an acquittal stating that his "plea in bar reflected that a copy of the family court's *contempt order* was attached to the plea," but was missing from the appellate record. 974 S.W.2d 735 (Tex.Crim.App. 1998) (emphasis added). Accordingly, this court abated the appeal on August 19, 2004, and ordered the district clerk to

supplement the record with the missing documentation.

■ It has been said there "is nothing more horrible than the murder of a beautiful theory by a brutal gang of facts."[1] Here, the appellate record (as supplemented by the district clerk) offers absolutely no hint of support for appellant's contention. Appellant was never prosecuted for violating a protective order, never held in contempt, and never punished for violating a protective order.[2] In short, the factual representations in appellant's brief are entirely specious. Moreover, the complaint on appeal is a gross exaggeration and amplification of the argument presented to the trial court. At trial, appellant argued that the mere *imposition* of a protective order (not a *violation* of a protective order) is sufficient to constitute punishment particularly where attorney fees and costs have been imposed against him. We might well, at this point, overrule appellant's first point of error because (1) it does not comport with the objection made at trial and (2) is entirely unsupported by the record. *See In re D.T.C.*, 30 S.W.3d 43, 48 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (holding an objection at trial not comporting with complaint on appeal does not preserve error for appellate review); *Wyatt v. State*, 836 S.W.2d 334, 335 (Tex. App.-Houston [14th Dist.] 1992, pet. ref'd) (holding mere assertions in appellant's brief, unsupported by record, present nothing for review). In the interest of justice, however, we will consider the much more modest (and factually accurate) argument presented to the trial court as if it had been properly presented for appellate review.

The record reflects the burglary of Flaniken's apartment occurred on April 19, 2003, and appellant was subsequently charged by indictment on May 20, 2003. The burglary cause of action was assigned to the 337th District Court. In the meantime, Flaniken apparently applied for a protective order in the 246th District Court.[3] On May 21, 2003, a hearing was conducted on Flaniken's application for a protective order, and after considering the pleadings and evidence, the 246th District Court found "that family violence has occurred and that family violence is likely to occur again in the future." Accordingly, the 246th District Court issued a protective order instructing appellant not to (1) commit further violence against Flaniken, (2) communicate directly with her, (3) communicate a threat to Flaniken via any person, or (4) go near her residence or place of employment. The court further ordered appellant to reimburse the prosecuting attorney $300 as reasonable and necessary attorney fees, pay the district clerk $61 for filing fees and costs of service, and also to pay the clerk for unspecified court costs, charges, and expenses incurred in connection with the protective order.

1. Francois La Rochefoucauld [1747–1827]— DAVID S. SHRAGER AND ELIZABETH FROST, THE QUOTABLE LAWYER 109 (1986).

2. We note, in passing, that even if appellant's assertions of fact had been supported by the record, he would not be entitled to relief. Because the elements of contempt (or the violation of a protective order) are distinctly different from burglary of a habitation, punishment for one does not bar prosecution and punishment for the other. *See Ex parte Arenivas*, 6 S.W.3d 631, 635–36 (Tex.App.-El Paso 1999, no pet.) (holding elements of criminal contempt for violating protective order were different from elements for injury to child and, thus, punishment for contempt did not bar prosecution for injury to a child).

3. In a county with a population of more than 1.5 million, the district court is, in most cases, required to set the hearing date not later than 20 days after the application is filed. *See* TEX. FAM.CODE ANN. § 84.02 (Vernon 2002).

Thereafter, on August 11, 2003, appellant filed a special plea of double jeopardy in the 337th District Court in which he alleged that he already had been punished for the burglary of Flaniken's apartment in the 246th District Court when that court (1) assessed attorney's fees of $300.00 against him, (2) ordered him to reimburse Harris County the sum of $61.00 for filing fees, and (3) ordered him to pay the unspecified amount of all costs, fees, charges or expenses incurred in connection with the protective order. The 337th District Court denied appellant's double jeopardy plea.

■ The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy for life or limb." U.S. Const. amend. V.[4] The Double Jeopardy Clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 768 n. 1, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994).

A protective order is in the nature of a civil injunction. *See* Tex. Fam.Code Ann. § 88.002(5) (Vernon 2002). The applicant for a protective order must allege that the respondent has committed an act of family violence. Tex. Fam.Code Ann. § 82.004 (Vernon 2002). The application must then be served upon the respondent in the same manner as citation under the Texas Rules of Civil Procedure. Tex. Fam.Code Ann. § 82.043 (Vernon 2002). The respondent may, but is not required to, file an answer. Tex. Fam.Code Ann. § 82.021 (Vernon 2002). If, after a hearing, the court finds the respondent committed family violence,

it may require the respondent to (1) complete a battering intervention and prevention program, (2) counsel with a social worker, family service agency, physician, psychologist, licensed therapist, or licensed professional counselor, or (3) perform acts necessary or appropriate to prevent or reduce the likelihood of family violence (*e.g.*, refrain from committing further acts of violence, communicating with the applicant, going near the applicant's residence, etc.). Tex. Fam.Code Ann. § 85.022 (Vernon 2002). The purpose of a protective order is "to prevent an individual from engaging in [further] violent or threatening acts against, harassing, contacting or communicating with, or being in physical proximity to another individual." Tex. Fam.Code Ann. § 88.002(5). As is common in many civil proceedings, the court may assess reasonable attorney fees against the party found to have committed family violence. Tex. Fam.Code Ann. § 81.005 (Vernon 2002).

■ Here, the record is silent as to what incident formed the basis for the issuance of the protective order. Flaniken testified in the criminal trial that appellant previously had choked and hit her, and that he had broken her door on two other occasions. Moreover, Flaniken's application for a protective order was not introduced in the trial court and is not in the appellate record. Thus, it is possible the protective order was issued on some basis other than the April 19, 2003 incident. Accordingly, appellant has not shown that the conduct forming the basis for the protective order is the same conduct underlying the instant criminal prosecution.

However, even if it had been established that Flaniken obtained a protective order on the basis of appellant's April 19, 2003

---

4. The federal provision is applicable to the states through the Fourteenth Amendment.

*Benton v. Maryland,* 395 U.S. 784, 795–96, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

burglary and assault, no jeopardy would attach to prevent appellant's criminal prosecution.

In support of his argument, appellant relies on *Ex parte Rhodes,* 974 S.W.2d 735 (Tex.Crim.App.1998). We do not find *Rhodes* applicable to the facts in the case at bar. In a divorce proceeding, the trial court entered a decree ordering that the parties' child reside in Harris County, and enjoining either party from changing the child's residence without prior court approval. *Id.* at 736. In violation of that order, the defendant removed his child to Malaysia and Singapore. *Id.* The defendant was arrested after returning to the United States and charged with interference with child custody. *Id.* Prior to his arrest, the defendant's wife had instituted proceedings to have him found in contempt of court for violating the custody order. *Id.* at 736–37. The court found the defendant was in contempt of court for violating the custody order, assessed as punishment a $100 fine and $2500 in legal fees, and required the defendant to post a $2500 bond to ensure future compliance with the custody order. *Id.* at 737. The Texas Court of Criminal Appeals held that because the defendant already had been prosecuted for contempt of court, his subsequent prosecution for interference with child custody was barred by the double jeopardy clause. *Id.* at 742.

Here, appellant contends that he "had already been prosecuted and punished for the same conduct under a separate con-tempt order regarding the same conduct." However, unlike *Rhodes,* there is nothing in the record to suggest that there was any "contempt" action against appellant concerning the same conduct as in the current prosecution for burglary. *See Harren v. State,* No. 03–99–00752–CR, 2000 WL 766263, at *2 (Tex.App.-Austin June 15, 2000, no pet.) (not designated for publication) (stating that issuance of protective order following act of family violence is not akin to conviction for criminal contempt for violating court order). Instead, after the occurrence of the burglary on April 19, 2003, the trial court granted Flaniken's request for a protective order against appellant; therefore, appellant's conduct on April 19, 2003, could not have violated a contempt order which had not yet been entered and the subsequent prosecution for burglary is not barred by a prior conviction for the same offense.

■ The El Paso Court of Appeals has considered the issue of whether the entry of a protective order constitutes punishment for double jeopardy purposes. *Ex parte Chairez,* No. 08–00–00083, 2001 WL 63033, at *3 (Tex.App.-El Paso January 25, 2001, no pet.) (not designated for publication). In *Chairez,* the court first observed that if a civil sanction or remedy imposed on a person does not constitute "punishment," then a subsequent criminal prosecution of that person arising out of the same situation, circumstances, or conduct does not implicate or violate protections against double jeopardy. *Id.* at *2.[5] The

5. Citing *Ex parte Tharp,* 935 S.W.2d 157, 159–61 (Tex.Crim.App.1996) (holding that administrative license suspension did not constitute punishment and, therefore, did not implicate protections against double jeopardy in regard to subsequent prosecution for DWI); *Fant v. State,* 931 S.W.2d 299, 308–09 (Tex.Crim.App. 1996) (holding that Texas' civil asset-forfeiture scheme did not constitute punishment and, therefore, did not implicate protections

against double jeopardy in regard to subsequent prosecution for offense underlying asset forfeiture); *Ex parte Sheridan,* 974 S.W.2d 129, 131–34 (Tex.App.-San Antonio 1998, pet. ref'd) (holding that cancellation of defendant's alcoholic beverage license because he lied on his application did not constitute punishment and, therefore, did not bar his subsequent prosecution for making false statements on his application).

*Chairez* court also explained that the primary purpose of the Family Code authorizing the entry of a protective order is to prevent domestic violence and protect the victims of domestic violence, not to punish the offenders. *Id.* This same policy was addressed in the Texas Code of Criminal Procedure. *Id.* at *3.[6] Thus, the *Chairez* court determined that the entry of a protective order does not constitute punishment for double jeopardy purposes. *Id.*

The Austin Court of Appeals similarly held the primary purpose of a protective order is to protect against future acts of family violence. *Harren,* 2000 WL 766263, at *2. Therefore, such proceeding issuing the protective order is not the equivalent of prosecution and the protective order is not punishment. *Id.*[7]

The Double Jeopardy Clause of the Fifth Amendment protects against multiple punishments for the "same offense." *State v. Houth,* 845 S.W.2d 853, 856 (Tex. Crim.App.1992). It also protects against successive prosecutions for the "same offense" following acquittal or conviction. *Id.* While the imposition of a protective order is always in response to an act or threat of violence, it can hardly be said that the order is either a "prosecution" or a "punishment" for that act or threat of violence. Certainly, the Legislature never intended a protective order to constitute a "prosecution" or a "punishment." In fact, it has authorized the issuance of a protective order and the subsequent criminal prosecution for the same underlying conduct. *Chairez,* 2001 WL 63033, at *4–5.[8]

Assuming *arguendo* the entry of the protective order here was based on the same conduct underlying the instant criminal prosecution, we find the prosecution of the criminal charge is not barred by double jeopardy.

### MOTION FOR MISTRIAL

■ In his second point of error, appellant claims the trial court erred in refusing to grant a mistrial after the jury heard he previously had been in jail in violation of his right to a fair and impartial jury trial. We review the trial court's decision to deny a mistrial for an abuse of discretion. *Wead v. State,* 129 S.W.3d 126, 129 (Tex. Crim.App.2004).

During the State's examination, Flaniken testified:

Q. How long did you-all date?

A. On and off, about five years.

Q. And have you since ended that relationship?

---

6. *See* TEX.CODE CRIM. PROC. ANN. art. 5.01(a) (Vernon Supp.2004–05) ("Victims of family violence are entitled to the maximum protection from harm or abuse or the threat of harm or abuse as is permitted by law."); *Id.* at 5.01(b) ("In any law enforcement, prosecutorial, or judicial response to allegations of family violence, the responding law enforcement or judicial officers shall protect the victim, without regard to the relationship between the alleged offender and victim.").

7. Citing *Tharp,* 935 S.W.2d at 161 (holding an administrative driver's license suspension for failing intoxication test is remedial rather than punitive, and does not bar prosecution for driving while intoxicated).

8. *Compare* TEX.CRIM.CODE PROC. ANN. art. 5.06(a)(1) (providing that neither the prosecuting attorney nor the court may "dismiss or delay any criminal proceeding that involves a prosecution for an offense that constitutes family violence because a civil proceeding is pending or not pending;"), *and* art. 5.06(b) ("A prosecuting attorney's decision to file an application for a protective order under Chapter 71, Family Code, should be made without regard to whether a criminal complaint has been filed by the applicant."), *with* TEX. FAM CODE ANN. § 81.008 (Vernon 2002) (providing "relief and remedies provided by this substitle are cumulative of other relief and remedies provided by law").

A. Yes.

Q. How long ago did you end your relationship with him?

A. Since the last time [appellant] got out of jail. Like he got out in 2000—

MR. LEITNER: Your Honor, I object to that.

THE COURT: Sustained.

MR. LEITNER: I ask the jury be instructed to disregard.

THE COURT: The jury will disregard the last comment.

MR. LEITNER: And I move for a mistrial.

THE COURT: Overruled.

■ Testimony that refers to or implies extraneous offenses can be rendered harmless by an instruction to disregard by the trial court, unless the evidence was so clearly calculated to inflame the minds of the jury or is of such damning character as to suggest it would be impossible to remove the harmful impression from the jury's mind. *Kemp v. State*, 846 S.W.2d 289, 308 (Tex.Crim.App.1992). Flaniken's response was not responsive to the prosecutor's question. Rather than merely state that their relationship ended in 2000, Flaniken added that it had ended "[s]ince the last time [appellant] got out of jail. Like in 2000—." However, her testimony was not embellished in any manner. We do not find that this uninvited and unembellished reference to appellant's incarceration was so inflammatory as to undermine the efficacy of the trial court's instruction to disregard to the jury. *See Id.* (finding witness' testimony, "this caller also provided information that she had a son ... who had recently been released from the penitentiary," was not so inflammatory as to undermine efficacy of trial court's instruction to disregard); *Gardner v. State*, 730 S.W.2d 675, 697 (Tex.Crim.App.1987) (finding witness' testimony, "[the defendant]

told me that even when he was in the penitentiary, that he had stomach problems," was not so inflammatory as to undermine efficacy of trial court's instruction to disregard); *Hughes v. State*, 962 S.W.2d 89, 92 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd) (finding witness' testimony, "when [the defendant] got out of jail ..." was not calculated to inflame minds of jury and instruction to disregard was sufficient to cure any harm).

■ Furthermore, another reference to appellant's prior incarceration was made during cross-examination. Flaniken testified in response to defense counsel's questioning:

Q. From the very beginning what was y'all's relationship like?

A. Off and on, because he's been in and out of jail.

Appellant did not object to this testimony. " '[I]nadmissible evidence can be rendered harmless if other evidence is admitted at trial without objection and it proves the same fact that the inadmissible evidence sought to prove.' " *Mayes v. State*, 816 S.W.2d 79, 88 (Tex.Crim.App.1991) (quoting *Anderson v. State*, 717 S.W.2d 622, 628 (Tex.Crim.App.1986)). We conclude the trial court did not abuse its discretion in denying appellant's motion for a mistrial, and even if the trial court had abused its discretion, the subsequent admission of the same evidence rendered any error harmless. Appellant's second point of error is overruled.

### LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

In his third through eighth points of error, appellant claims the evidence is not legally and factually sufficient to support his conviction for burglary because the State failed to prove that (1) he committed assault or attempted assault, (2) Flaniken had no greater right to possession of the

apartment than he did, and (3) he entered the apartment without the effective consent of Flaniken.

■ When reviewing the legal sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Wilson v. State*, 7 S.W.3d 136, 141 (Tex.Crim.App.1999). In conducting this review, we do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure that the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex.Crim.App. 1993).

■ When reviewing the factual sufficiency of the evidence, we need answer only one question: Considering all of the evidence in a neutral light, was the trier of fact rationally justified in finding guilt beyond a reasonable doubt? *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004). There are two ways in which the evidence may be insufficient. *Id.* First, when considered by itself, evidence supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt. *Id.* Second, there may be evidence both supporting, and contrary to, the verdict. *Id.* Weighing all the evidence under this balancing scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met and the guilty verdict should not stand. *Id.* at 485.

■ It is within the province of the trier of fact to resolve any conflicts and inconsistencies in the evidence. *Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex.Crim. App.1995). The trier of fact is free to believe or disbelieve part or all of a wit-ness' testimony. *Jones v. State*, 984 S.W.2d 254, 258 (Tex.Crim.App.1998).

■ In his third and fourth points of error, appellant contends the evidence is legally and factually insufficient to support his conviction because the State failed to prove that he committed assault or attempted assault. With regard to the offense of burglary, the Texas Penal Code provides that

(a) A person commits the offense of burglary if, without the effective consent of the owner, the person:

\* \* \*

(3) enters a building or habitation and commits or attempts to commit a felony, theft or assault.

TEX. PEN.CODE ANN. § 30.02(a)(3) (Vernon 2003). A person commits the offense of assault when he (1) intentionally, knowingly, or recklessly causes bodily injury to another, or (2) intentionally, or knowingly threatens to cause imminent bodily injury to another. TEX. PEN.CODE ANN. § 22.01(a)(1) and (2) (Vernon Supp.2004– 05).

Appellant argues that although Flaniken testified that he threatened to get a knife and later pushed her around and Officer Boutte testified that he saw appellant place Flaniken in a choke hold, there was no testimony that Flaniken understood his statement to be an imminent threat of harm. Flaniken testified that appellant had left messages on her cell phone, stating that he was going to beat her, had started beating on her door, came into her apartment after she heard the door "busted open," snatched the phone from her as she was attempting to call the police, stated he was going to get a knife, punched her in the shoulder, pushed her on the couch, and started choking her. Officer Boutte testified that when he arrived, he

observed appellant with Flaniken in a choke hold and after appellant had been arrested, he observed Flaniken "crying hysterically." Appellant testified that he did not threaten Flaniken with a knife or otherwise. He claimed he pushed her away when she came up to him "hollering" about the door he had broken open.

Given all the circumstances surrounding appellant's actions, we find the evidence supports a determination beyond a reasonable doubt that Flaniken understood appellant's statement to be a threat of imminent harm. When viewed neutrally, the evidence is not so obviously weak as to render the verdict clearly wrong or so greatly outweighed by contrary proof as to indicate manifest injustice.

■ Appellant also claims there was no showing that any contact between him and Flaniken resulted in bodily injury to her because Flaniken's injuries were minor and she did not require medical attention. Bodily injury means physical pain, illness, or any impairment of physical condition. TEX. PEN.CODE ANN. § 1.07(a)(8) (Vernon Supp.2004–05). Flaniken testified that appellant punched her on the shoulder, pushed her on the couch, and started choking her. Officer Boutte testified that he saw appellant with Flaniken in a choke hold and later observed reddish marks around Flaniken's neck. Appellant testified that after he pushed Flaniken, she showed him a scratch she had sustained. Photographs showing a scratch sustained by Flaniken on her collarbone were admitted into evidence.

When viewed in the light most favorable to the verdict, we find the evidence supports a determination beyond a reasonable doubt that appellant intentionally and knowingly caused bodily injury to Flaniken. When viewed neutrally, the evidence is not so obviously weak as to render the verdict clearly wrong or so greatly out-

weighed by contrary proof as to indicate manifest injustice. Appellant's third and fourth points of error are overruled.

■ In his fifth and sixth points of error, appellant asserts the evidence is legally and factually insufficient to support his conviction for burglary because the State failed to prove that Flaniken had a greater right to possession of the apartment than he did. "Owner" means a person who "has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." TEX. PEN.CODE ANN. § 1.07(a)(35)(A).

Appellant admits that the trial record shows that Flaniken resided alone at the apartment on Gillette Street and, consequently, had possession of the apartment, and that the lease agreement signed by Flaniken did not include his name. Appellant testified that he resided at his grandmother's house on Webster Street, that his driver's license reflects his residence was his grandmother's house on Webster Street, and that he did not have keys to Flaniken's apartment.

Appellant, however, claims he and Flaniken were husband and wife at the time of the incident, that during April 2003, he and Flaniken were "together every day," and that he helped Flaniken with the bills. Appellant argues that under these circumstances, the record established a community property basis for possession of the apartment.

Flaniken testified that appellant held himself out as her husband after they had children. When appellant did this, Flaniken did not correct him. Flaniken, however, testified they never lived together in the same household and the longest they stayed together was two nights. Appellant had no belongings at her apartment. The jury was not instructed in the charge

to determine whether a common law marriage between appellant and Flaniken existed.[9] However, even if a common law marriage existed between appellant and Flaniken, such marriage did not diminish in any way Flaniken's greater right to possession of the apartment. *See Gomez v. State*, 905 S.W.2d 735, 741 (Tex.App.-Houston [14th Dist.] 1995), *aff'd on other grounds*, 962 S.W.2d 572 (Tex.Crim.App. 1998) (stating marital relationship does not authorize spouse to enter estranged spouse's residence).

We find the evidence, when viewed in the light most favorable to the verdict, supports a determination beyond a reasonable doubt that Flaniken had a greater right to possession of the apartment than appellant. When viewed neutrally, the evidence is not so obviously weak as to render the verdict clearly wrong or so greatly outweighed by contrary proof as to indicate manifest injustice. Appellant's fifth and sixth points of error are overruled.

In his seventh and eighth points of error, appellant claims the evidence is legally and factually insufficient to support his conviction for burglary because the State failed to prove he entered the apartment without Flaniken's effective consent. The charge defined "effective consent" as "assent in fact, whether express or apparent, and includes consent by a person legally authorized to act for the owner. Consent is not effective if induced by force, threat, deception or fraud." *See* Tex. Penal Code Ann. § 1.07(a)(11) and (19).

Appellant argues Flaniken's testimony that she did not want him to enter the apartment on April 19, 2003, does not end the inquiry. Appellant states that he had spent the night with Flaniken in the apartment a few days before the alleged offense, he had been in the apartment on numerous other occasions, and he and Flaniken had an ongoing relationship.

In addition to Flaniken's testimony that she did not want appellant to enter her apartment, appellant admitted that when Flaniken refused to unchain the door, he broke the chain on the door and pushed it open. Moreover, there is evidence that appellant actually kicked in the door. After Flaniken told appellant he could not come into the apartment and had returned upstairs, she heard the door "busted open." Officer Jaime testified the front door frame was on floor, indicating that the door had been kicked in. Appellant denies kicking in the door, instead, asserting the police were responsible for kicking in the door.

We hold the evidence, when viewed in the light most favorable to the verdict, supports a determination beyond a reasonable doubt that appellant entered Flaniken's apartment without her effective consent. When viewed neutrally, the evidence is not so obviously weak as to render the verdict clearly wrong or so greatly outweighed by contrary proof as to indicate manifest injustice. Appellant's seventh and eighth points of error are overruled.

Accordingly, the judgment of the trial court is affirmed.

---

9. To find that a common law marriage exists in Texas, the following elements must be established: (1) an agreement to be married; (2) living together in Texas as husband and wife subsequent to the agreement to be married; and (3) representing to others in Texas that they were married. Tex. Fam.Code Ann. § 2.401(a)(2) (Vernon 1998).