ACCEPTED
06-14-00088-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
1/22/2015 11:31:28 AM
DEBBIE AUTREY
CLERK

# IN THE COURT OF APPEALS FOR THE
## SIXTH DISTRICT OF TEXAS AT TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
1/23/2015 9:35:00 AM
DEBBIE AUTREY
Clerk

| | | |
|---|---|---|
| **SAMUEL DELEON GARZA,** | § | |
| APPELLANT | § | No. 06-14-00088-CR |
| | § | No. 06-14-00089-CR |
| v. | § | No. 06-14-00090-CR |
| | § | No. 06-14-00091-CR |
| **THE STATE OF TEXAS,** | § | No. 06-14-00092-CR |
| APPELLEE | § | No. 06-14-00093-CR |

---

## STATE'S REPLY BRIEF

---

FROM THE 196TH DISTRICT COURT
HUNT COUNTY, TEXAS
TRIAL CAUSE NUMBERS 28,996, 28,997, 28,998, 28,999, 29,016, 29,017
THE HONORABLE STEPHEN R. TITTLE, JUDGE PRESIDING

**NOBLE DAN WALKER, JR.**
District Attorney
Hunt County, Texas

**G CALVIN GROGAN V**
Assistant District Attorney
P. O. Box 441
4th Floor Hunt County Courthouse
Greenville, TX  75403
(903) 408-4180
FAX (903) 408-4296
State Bar No. 24050695

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. 2
TABLE OF AUTHORITIES ........................................................................................... 3
STATEMENT OF CASE.................................................................................................. 5
ISSUES PRESENTED...................................................................................................... 6
SUMMARY OF THE STATE'S ARGUMENTS ...................................................... 7
STATEMENT OF FACTS ............................................................................................ 8
STATE'S RESPONSE TO POINT OF ERROR ................................................... 13
   STANDARD OF REVIEW FOR LEGAL
   INSUFFICIENCY.................................................................................................... 13

EVIDENCE WAS LEGALLY SUFFICIENT TO SHOW APPELLANT'S
DATING RELATIONSHIP WITH VICTIM........................................................... 14

   MARIA ULLOA'S BOYFRIEND ................................................................. 14

EVIDENCE WAS LEGALLY SUFFICIENT TO SHOW APPELLANT
ENTERED VICTIM'S HOME AND COMMITTED ASSAULT ........................ 17

   MARIA ULLOA'S TESTIMONY AND GPD PHOTOS OF MARIA............. 17

   OFFICER LEIGH DIXON'S TESTIMONY ....................................... 17

EVIDENCE WAS LEGALLY SUFFICIENT TO SHOW APPELLANT
COMMITTED RETALIATION ................................................................................. 19

PRAYER ........................................................................................................................ 23
CERTIFICATE OF SERVICE ................................................................................. 24

# INDEX OF AUTHORITIES

Federal Cases

*Jackson v. Virginia,* 443 U.S. 307, 318-19 (1979) .................................................. 13


Texas Cases

*Brooks v. State,* 323 S.W.3d 893 (Tex. Crim. App. 2010) ...................................... 13

*Harris v. State,* 164 S.W.3d 775 (Tex. App. – Houston [14th Dist.] 2005,
pet. ref'd) ................................................................................................................... 17

*Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) ................................... 13

*Issasi v. State,* 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) ............................... 13

*Moore v. State,* 54 S.W.3d 529, 539 (Tex. App. – Fort Worth 2001, pet. ref'd).. 18

*Moore v. State,* 143 S.W.3d 305, 310 (Tex. App. – Waco 2004, pet. ref'd) ........ 19

*Morrow v. State,* 862 S.W.2d 612, 615 (Tex. Crim. App. 1993) ........................... 19


Texas Statutes

TEXAS PENAL CODE SECTION 1.07(a)(8) (Vernon 2014) ....................................... 18

TEXAS PENAL CODE SECTION 6.04(a) (Vernon 2014) ........................................... 20

TEXAS PENAL CODE Section 22.01(a)(1) (Vernon 2014) ...................................... 13

TEXAS PENAL CODE Section 22.01(b)(2) (Vernon 2014) ...................................... 14

TEXAS FAM. CODE ANN. Section 71.0021(b)-(c) (Vernon 2014) .......................... 14

TEXAS PENAL CODE Section 30.01(a)(3) (Vernon 2014) ....................................... 17

TEXAS PENAL CODE SECTION 36.06(a)(1) (Vernon 2014) ..................................... 19

TEXAS PENAL CODE Section 36.06(b)(2) (Vernon 2014) ....................................... 19

# IN THE COURT OF APPEALS FOR THE
## SIXTH DISTRICT OF TEXAS AT TEXARKANA

| | | |
|---|---|---|
| **SAMUEL DELEON GARZA,** | § | |
| APPELLANT | § | **No. 06-14-00088-CR** |
| | § | **No. 06-14-00089-CR** |
| v. | § | **No.  06-14-00090-CR** |
| | § | **No. 06-14-00091-CR** |
| **THE STATE OF TEXAS,** | § | **No. 06-14-00092-CR** |
| APPELLEE | § | **No. 06-14-00093-CR** |

---

## STATE'S REPLY BRIEF

---

TO THE HONORABLE COURT OF APPEALS:

NOW COMES the State of Texas, Appellee, in this appeal from Cause Nos. 28,996, 28,997, 28,998, 28,999, 29,016 and 29,017 in the 196th District Court in and for Hunt County, Texas, Honorable Stephen R. Tittle, Presiding, now before the Sixth District Court of Appeals, and respectfully submits this its brief to the Sixth District Court of Appeals in support of the judgment of conviction and sentence in the court below.

## Statement of Case

On May 31, 2013, Appellant was indicted for Assault Family Violence with a Prior Conviction in Cause Numbers 28,996, 28,997, 28,999 and 29,016; Retaliation in Cause Number 29,017; and Burglary of Habitation in Cause Number 28,998. The alleged crimes occurred from February 2, 2013, through April 7, 2013. On July 31, 2013, Appellant was arraigned and entered pleas of not guilty. CR Vol.1.p.6.[1] On February 12, 2014, the State filed its Motion to Consolidate all cases which was granted by the Court on April 22, 2014. CR Vol.1.pp.65, 71. Appellant stipulated to his previous Assault Family Violence Conviction on April 28, 2014, which was offered into evidence as Joint Exhibit No. 1. CR Vol.1.p.73, RR Vol.4.p.35. On May 5, 2014, the Appellant was found guilty by a jury in all cases. CR Vol.1.p.9. At punishment, the Appellant pled true to two enhancement paragraphs alleged in the aforementioned indictments. CR Vol.1.p.6. The jury assessed punishment at forty (40) years in the Texas Department of Corrections in Cause Number 28,996. CR Vol.1.p.58.[2] The jury assessed punishment at forty-five (45) years in the Texas Department of Corrections in Cause Number 29, 016. CR Vol.1.p.87. The jury assessed punishment at fifty-two (52) years in the Texas

---

[1] To consolidate, all references to CR Vol.1. refer to Cause No. 29,016 unless otherwise indicated in a separate footnote.
[2] Cause No. 28,996.

5

Department of Corrections in Cause Number 28,997. CR Vol.1.p.93.[3] The jury

assessed punishment at seventy-three (73) years in the Texas Department of

Corrections in Cause Number 28,998. CR Vol.1.p.90.[4] The jury assessed

punishment at eighty (80) years in the Texas Department of Corrections in Cause

Number 29, 017. The jury assessed punishment at eighty-five (85) years in the

Texas Department of Corrections in Cause Number 28,999. CR Vol.1.p.88.[5] The

Court ran all sentences concurrently. The Court pronounced sentence on May 6,

2014, and certified the Appellant's right to appeal. CR Vol.1.p.92. Appellant gave

written notice of appeal in all cases on May 8, 2014. CR Vol.1.p.93. Appellant

filed a Motion for New Trial in all cases on June 2, 2014. CR Vol.1.p.95.


## ISSUES PRESENTED

**Issue 1. Was the Evidence Legally Sufficient to Prove the Assault Family**

**Violence Element of "Dating Relationship" Beyond a Reasonable Doubt?**

**Issue 2. Was the Evidence Legally Sufficient to Prove the Burglary of a**

**Habitation With Intent to Commit Assault Element of "Injury" Beyond a**

**Reasonable Doubt?**

---

[3] Cause No. 28,997.
[4] Cause No. 28,998.
[5] Cause No. 28,999.

**Issue 3. Was the Evidence Legally Sufficient to Prove all of the Elements of Retaliation Beyond a Reasonable Doubt?**

## SUMMARY OF THE ARGUMENT

1. Viewing the evidence in a light favorable to the State in Cause Nos. 28,996, 28,997, 28,999 and 29,016, a rational trier of fact could have found Ms. Ulloa was in a dating relationship with Appellant on February 2 and 4, 2013, proven beyond a reasonable doubt. Ms. Ulloa's testimony, her son Nicholas' testimony, and Defense Exhibit No. 1 proved there was a romantic and intimate relationship, so intense that it triggered Appellant's violence.

2. Viewing the evidence in a light favorable to the State in Cause No. 28,998, a rational trier of fact could have found Ms. Ulloa was injured during the Burglary of Habitation on or about February 5, 2013, proven beyond a reasonable doubt. Photos of Ms. Ulloa, Ms. Ulloa's testimony, and Nicholas' 911 calls proved Appellant's violence hurt her physically.

3. Viewing the evidence in a light favorable to the State in Cause No. 29,017, a rational trier of fact could have found all the elements for Retaliation proven beyond a reasonable doubt. Based on the intense relationship between Appellant and Ms. Ulloa, the escalating violence that occurred after Ms. Ulloa was interviewed by law enforcement on February 4, 2013, leads to the inescapable conclusion that Appellant thought Ms. Ulloa was a "snitch."

## Statement of Facts

Maria Ulloa had lived at 3103 Cornelia Street for ten years, along with her three boys for most of that time. RR Vol.4.p.93. In February 2013, only Ms. Ulloa and her nine-year old son Nicholas lived in the home. RR Vol.4.p.93. Nicholas' father had been absent for the past ten years, and the other two boys father lived in Celeste, Texas. RR Vol.4.pp.95-96. Ms. Ulloa met the Appellant in December 2012. RR Vol.4.pp.94, 151. Within two weeks of meeting, they were in a relationship. RR Vol.4.p.95. Since Ms. Ulloa's profession was owning rent houses that allowed her to work from home, and the Appellant was unemployed and without transportation, they spent a lot of time just hanging out in her home. RR Vol.4.pp.97, 167-68. If Appellant needed to run errands, Ms. Ulloa lent him her white 2006 GMC Sierra truck. RR Vol.4.p.98. Appellant left his clothes at her house, and sometimes stayed several nights in a row. RR Vol.4.pp.97, 156. Ms. Ulloa's relationship with the Appellant became abusive shortly thereafter, both emotionally and physically. RR Vol.4.p.99. Ms. Ulloa let the abuse go unreported for about two months. RR Vol.4.p.100.

Ms. Ulloa and her son Nicholas placed 911 calls on the morning of February 2, 2013 and evening of February 4, 2013. RR Vol.4.p.71; State's Exhibit Nos. 2-3. In Ms. Ulloa's 911 call placed at 1:51a.m. on February 2, 2013, she described that Appellant came into her residence and assaulted her. RR Vol.4.pp.38, 42, 105.

8

After entering the living room and accusing Ms. Ulloa of cheating on him, Appellant hit her in the mouth with his fists. RR Vol.4.pp.104-05. This was the first incident of physical abuse between the two. RR Vol.4.p.105. Appellant left the house before police could arrive. RR Vol.4.p.105. Greenville Police Department ("GPD") officer Brandon West documented the blood on Ms. Ulloa's mouth by taking photos of Ms. Ulloa. RR Vol.4.p.106, Vol.5.pp.51, 57; State Exhibit Nos. 46-48. Although Ms. Ulloa and Appellant communicated through phone calls and text messages the next day, she did not see him again until February 4, 2013. RR Vol.4.p.108.

On the afternoon of February 4, 2013, Ms. Ulloa was requested for an interview at GPD concerning Appellant's use of her vehicle. RR Vol.4.p.111. After being interviewed for an hour, GPD Detective Mike Johnston dropped Ms. Ulloa off at her home. RR Vol.4.p.112, Vol.5.p.74. Within ten minutes, Appellant arrived at Ms. Ulloa's house and began accusing her of "snitching" on him. RR Vol.4.pp.112-13. Prior to Appellant's arrival, Ms. Ulloa had locked the front door and began taking a nap. RR Vol.4.p.115. Appellant began physically abusing Ms. Ulloa in her bedroom. RR Vol.4.p.113. Appellant kicked Ms. Ulloa's leg and hit her face with his fists. RR Vol.4.p.115, Vol.5.p.9; State Exhibit Nos. 50-53.

There were three 911 calls placed by Nicholas on February 4, 2013. RR Vol.4.pp.45, 48, 74. Nicholas saw his mom on the ground and the Appellant

9

hitting her from above with his fists. RR Vol.4.p.75. Nicholas heard his mom crying while this was happening. RR Vol.4.p.75. Nicholas ran to the neighbor's house to make the 911 calls because there was no house phone available. RR Vol.4.pp.72-74. Nicholas waited at the neighbor's house until the police arrived. RR Vol.4.p.73. Appellant fled the scene before police arrived around 6 p.m. RR Vol.4.p.119, Vol.5.p.8. After returning home, Nicholas saw bruises and blood on his mom's body. RR Vol.4.p.73. Ms. Ulloa provided a written statement to GPD. RR Vol.4.p.120. GPD Officer Leigh Dixon took photos of the damaged front door. RR Vol.5.p.11; State Exhibit Nos. 41-43.

Nicholas and his mom, with the guidance from Officer Dixon, re-locked the front door after the first assault on February 4th had occurred. RR Vol.4.p.78, 122. Appellant came back to Ms. Ulloa's house just a few hours later with a mutual friend named Cody. RR Vol.4.pp.123-24, RR Vol.5.p.12. After telling Cody from the front door that she did not want to speak to the Appellant, Appellant came out of nowhere and shoved Ms. Ulloa into the house. RR Vol.4.p.125. Appellant started hitting her face with his fists. RR Vol.4.p.126. Nicholas saw the Appellant push his mom against the front door causing her to hit the counter. RR Vol.4.p.76. Ms. Ulloa's hair got yanked and she was pushed to the ground by the Appellant. RR Vol.4.p.126. After Nicholas called 911 again, Officer Dixon arrived and took more photos of Ms. Ulloa's body and another written statement. RR Vol.4.p.128,

Vol.5.p.13; State Exhibit Nos. 54-56. Again, Appellant fled the scene before police arrived. RR Vol.5.p.13.

Appellant came back to Ms. Ulloa's home around 2:30 a.m. the morning of February 5th. RR Vol.5.p.42. GPD Officers had told Ms. Ulloa to place a chair behind the front door while they searched for him. RR Vol.4.p.129, Vol.5.p.18. Once Appellant got to Ms. Ulloa's bedroom, he hit her in the face with his fists. RR Vol.4.pp.130-31. Nicholas saw the Appellant come back and hit his mom in the head twice with his fists. RR Vol.4.p.79. After the 3rd 911 call was placed by Nicholas, GPD returned to Ms. Ulloa's home and took more photos of Ms. Ulloa. State Exhibit Nos. 57-61. Officer Dixon also took photos of the damaged front door and the chair that had been placed behind it. RR Vol.5.p.23; State Exhibit Nos. 44-45. Medical assistance was requested for Ms. Ulloa. RR Vol.5.p.20. Appellant was never caught that evening or the next morning. RR Vol.5.pp.41.

On February 7, 2013, Ms. Ulloa received a phone call from Appellant around 7 a.m. RR Vol.4.pp.134-35. There had been no contact between Ms. Ulloa and Appellant the preceding two days. RR Vol.4.p.135. On that phone call, Appellant was still accusing Ms. Ulloa of being a snitch. RR Vol.4.p.136. Appellant then came over to Ms. Ulloa's home to recover some of his personal property, including speakers in her truck. RR Vol.4.p.137. Within five minutes of Appellant recovering his speakers from the truck, Ms. Ulloa received a text

11

message that she knew was from the Appellant based upon the incoming phone number and the message content – "go look at your truck." RR Vol.4.pp.137-38, 142-43; State Exhibit No. 66. Shortly thereafter GPD Officer Victor Petrea arrived and took photos of Ms. Ulloa's damaged truck. RR Vol.5.p.65; State Exhibit Nos. 62-65. The back window of Ms. Ulloa's truck had been broken out. RR Vol.4.p.139.

Besides a few phone calls, there was no contact between Appellant and Ms. Ulloa until April 7, 2013, when the two met in an apartment complex parking lot. RR Vol.4.p.144. After approaching Ms. Ulloa's vehicle, Appellant opened her door and struck her in the mouth with his fists. RR Vol.4.p.146. As he hit Ms. Ulloa, Appellant said "he didn't want to see her with anyone else." RR Vol.4.p.147. After this final incident, Ms. Ulloa drove to the Greenville Police Department and more photos were taken of her. RR Vol.4.p.147; State Exhibit Nos. 18-21.

# ARGUMENT

## I. Evidence Was Legally Sufficient to Prove Beyond a Reasonable Doubt That Appellant And Maria Ulloa Were in a Dating Relationship at The Time The Assaults Occurred

### a. Standard of Review

In reviewing the evidence for legally sufficiency, the evidence is considered in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010). It is the responsibility of the fact finder to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences. *Isassi v. State*, 330 S.W.3d 633 (Tex. Crim. App. 2010). This standard applies to both direct and circumstantial evidence. *Id.* at 638. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

A person commits assault if the person intentionally or knowingly causes bodily injury to another. TEXAS PENAL CODE SEC. 22.01 (a)(1) (Vernon 2014). It is a 3rd degree felony if at trial it is shown that the offense is committed against a

person whose relationship to or association with the defendant is described in Section 71.0021(b). TEXAS PENAL CODE SEC. 22.01 (b)(2) (Vernon 2014).

> "A dating relationship means a relationship between individuals who have or have had a continuing relationship of romantic or intimate nature. The existence of such a relationship shall be determined based on consideration of: the length of the relationship, the nature of the relationship, and the frequency and type of interaction between the persons involved in the relationship. A casual acquaintanceship or ordinary fraternization in a business or social context does not constitute a dating relationship."

TEXAS FAM. CODE ANN. Sec. 71.0021 (b)-(c) (Vernon 2014).

### b. Maria Ulloa's Boyfriend

In Cause No. 28,996, the State had to prove beyond a reasonable doubt that on February 2, 2013, Appellant intentionally or knowingly caused bodily injury to Maria Ulloa, with whom he had or had had a dating relationship, by pulling her hair or by striking her head or face with his hand. CR Vol.1.p.9.[6]

In Cause No. 29,016, the State had to prove beyond a reasonable doubt that on February 4, 2013, Appellant intentionally or knowingly caused bodily injury to Maria Ulloa, with whom he had or had had a dating relationship, by kicking her leg or by pushing her to or against the floor. CR Vol.1.p.10.

In Cause No. 28,997, the State had to prove beyond a reasonable doubt that on February 4, 2013, Appellant intentionally or knowingly caused bodily injury to

---

[6] Cause No. 28,996.

14

Maria Ulloa, with whom he had or had had a dating relationship, by pushing her to or against a bed or by striking her chest or body. CR Vol.1.p.10.[7]

In Cause No. 28,999, the State had to prove beyond a reasonable doubt that on April 7, 2013, Appellant intentionally or knowingly caused bodily injury to Maria Ulloa, with whom he had or had had a dating relationship, by pulling her hair or by striking her head or face with his hand. CR Vol.1.p.10.[8]

In all of the aforementioned assaults, the only legal element contested by Appellant is whether or not he was in a dating relationship, as defined by the Texas Family Code, with Maria Ulloa at the time of these offenses. Appellant did not contest that he injured her during these four assaults, two of which occurred after he broke into her home. *See Infra* Discussion Part II Sec. A.

Ms. Ulloa testified she met the Appellant in December 2012. RR Vol.4.p.94. Within two weeks of meeting, they were in a relationship. RR Vol.4.p.95. Ms. Ulloa testified Appellant asked her out on dates shortly after they met. RR Vol.4.p.151. Ms. Ulloa described their dates as going out and shopping for food. RR Vol.4.p.152. Ms. Ulloa testified she dated Appellant exclusively during their brief time together. RR Vol.4.p.153. Appellant left his clothes at her house, and sometimes stayed several nights in a row in her bedroom. RR Vol.4.pp.97, 99. Nicholas testified that Appellant lived in their home off and on, leaving his

---

[7] Cause No. 28,997.
[8] Cause No. 28,999.

personal belongings. RR Vol.4.p.77. Nicholas testified that when Appellant stayed, he slept in his mom's bedroom. RR Vol.4.p.77. Ms. Ulloa even fell in love with the Appellant and they talked about marriage. RR Vol.4.pp.154-55. Ms. Ulloa signed the back of a picture given to the Appellant "I love you Sammy." Defense Exhibit No. 1.

Ms. Ulloa's relationship with the Appellant then became abusive shortly thereafter, both emotionally and physically. RR Vol.4.pp.99, 153. However, Ms. Ulloa testified that by February 2013, Appellant was still her boyfriend . RR Vol.4.p.93.

While this may not have been the longest dating relationship, it had all the characteristics of two people in a romantic or intimate relationship. Their signs of intimacy: they shared a private bedroom, a kitchen, a truck, and their lives for a few months. Their relationship had highs and lows. The low for Ms. Ulloa was the abuse endured during their brief relationship. The high for Ms. Ulloa was that she fell in love with him had thoughts about marriage. And Appellant's obsessive behavior indicated he thought he was in a dating relationship with Ms. Ulloa. On the night of his 1st assault, he accused her of cheating on him. RR Vol.4.p.104. On the day of his final assault, Appellant said to Ms. Ulloa "he didn't want to see her with anyone else" as he hit her in the mouth with his fists. RR Vol.4.p.147. Based

upon all the evidence, a rational juror could have found the dating relationship element proven beyond a reasonable doubt.

## II. Evidence Was Legally Sufficient to Prove Beyond a Reasonable Doubt that Appellant Caused Maria Ulloa Pain When He Committed The Burglary

### a. Standard of Review

"A person commits an offense if without the effective consent of the owner, enters a habitation and commits or attempts to commit an assault." TEXAS PENAL CODE SEC. 30.01(a)(3) (Vernon 2014).

### b. Maria Ulloa's Testimony and GPD Photos

In Cause No. 28,998, the State had to prove beyond a reasonable doubt that on or about February 5, 2013, Appellant entered Ms. Ulloa's habitation without her consent and committed an assault against her. CR Vol.1.p.10.[9] Appellant's only issue is whether he injured Ms. Ulloa during this incident. Although Appellant did not challenge the injuries sustained by Ms. Ulloa during the 1st two assaults on February 4, 2013, he challenged the final assault. Double jeopardy does not preclude prosecution for burglary following a domestic violence incident. *Harris v. State*, 164 S.W.3d 775 (Tex. App. – Houston [14th Dist.] 2005, pet. ref'd).

---

[9] Cause No. 28,998

Since the specific manner and mean of the assault was not alleged and is not challenged on appeal, all the State has to prove was Ms. Ulloa got injured during the burglary. *See Moore v. State*, 54 S.W.3d 529, 539 (Tex. App. – Fort Worth 2001, pet. ref'd). Bodily injury means physical pain, illness, or any impairment of physical condition. TEX. PEN. CODE SEC. 1.07(a)(8) (Vernon 2014).

Appellant came back to Ms. Ulloa's home a 3rd time around 2:30 a.m. on February 5th. RR Vol.4.p.129, Vol.5.pp.26, 42. Ms. Ulloa described the entire chain of events on February 4th occurred from 6 p.m. until 3 a.m. RR Vol.4.p.164. Appellant forced his way into Ms. Ulloa's home and bedroom on all three occasions, even after she thought she had secured the front door each time. RR Vol.4.p.165. GPD Officers had shown Nicholas and Ms. Ulloa a way to secure the damaged front door using the door knob after the 1st assault. RR Vol.4.p.122, Vol.5.p.19. And later that evening after the 2nd assault, GPD Officers had told Ms. Ulloa to place a chair behind the front door while they continued to search for him. RR Vol.4.p.129, Vol.5.p.18. Once Appellant got to Ms. Ulloa's bedroom, he hit her in the face with his fists. RR Vol.4.pp.130-31. GPD also took photos of the damaged front door and the chair that had been placed behind it. State Exhibit Nos. 44-45. The photos of Ms. Ulloa taken by GPD on the morning of February 5th speak for themselves. State Exhibit Nos. 57-61. All of the physical abuse on February 4th caused Ms. Ulloa pain. RR Vol.4.p.128. Officer Dixon testified Ms.

18

Ulloa was crying from apparent pain each time he responded to the 911 calls. RR Vol.5.p.16. Ms. Ulloa requested medical assistance after the 3rd assault of the evening. RR Vol.5.p.20.

A rational juror could have found the evidence proved beyond a reasonable doubt that the Appellant entered Ms. Ulloa's home on or about February 5, 2013, without her consent and caused her bodily injury.

## III. Evidence Was Legally Sufficient to Prove Beyond a Reasonable Doubt that Appellant Committed Retaliation in Cause No. 29,017

### a. Standard of Review

"A person commits an offense if he intentionally or knowingly harms or threatens to harm another by an unlawful act, in retaliation for or on account of the service or status of another as a witness, prospective witness, informant, a person who has reported, or who the actor knows intends to report the occurrence of a crime." TEX. PEN. CODE. Sec. 36.06(a)(1) (Vernon 2014). Direct evidence of intent is not required; retaliatory intent can be inferred from the acts, words, and conduct of the accused. *Moore v. State*, 143 S.W.3d 305, 310 (Tex. App. – Waco 2004, pet. ref'd). Whether one is a prospective witness must be judged from the standpoint of the person accused of retaliation. *Morrow v. State*, 862 S.W.2d 612, 615 (Tex. Crim. App. 1993). Informant means a person who has communicated

19

information to the government in connection with any governmental function. TEX. PEN. CODE Sec. 36.06(b)(2) (Vernon 2014).

### b.     Maria Ulloa's Testimony and the Text Messages

The State had to prove beyond a reasonable doubt that on or about February 8, 2013, Appellant intentionally or knowingly harmed or threatened harm to Maris Ulloa by committing three of the aforementioned assaults discussed *supra* in Part I Section a, and/or a threat to harm Maria Ulloa on February 8, 2013, by breaking her vehicle window and texting "eye for an eye bitch," and the unlawful acts were in retaliation for or on account of the service or status of her as an informant or a person who had reported the occurrence of a crime. CR Vol.1.p.82[10]

Appellant argues the State failed to prove it was his conscious objective to commit the offense, the alleged crimes he was retaliating for happened in 2009 and 2011 before he met Ms. Ulloa, he did not commit the unlawful acts, and that even if he did it was not proven that it was in retaliation.

"A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." TEX. PEN. CODE. Sec. 6.04(a) (Vernon 2014).

---

[10] Cause No. 29,017

On February 4, 2013, GPD Detective Mike Johnston interviewed Ms. Ulloa concerning Appellant's use of her 2006 truck. RR Vol.4.pp.101-02. Appellant's arrival at Ms. Ulloa's home ten minutes later shows he knew she was interviewed by GPD. That interview with GPD Det. Johnston triggered a night of physical abuse for Ms. Ulloa. *See* discussion *supra* Part I.Sec.a, Part II.Sec.a. There is nothing in the record to support Appellant's claim that Ms. Ulloa reported crimes in 2009 and 2011 against Appellant. Indeed, Det. Johnston testified Ms. Ulloa did not even "snitch" out Appellant during her February 4th interview. RR Vol.5.p.74.

On February 7, 2013, Ms. Ulloa received a phone call from Appellant around 7 a.m. RR Vol.4.pp.134-35. On that phone call, Appellant was still accusing Ms. Ulloa of being a snitch. RR Vol.4.p.136. Appellant then came over to Ms. Ulloa's home to recover some of his personal property, including speakers in her truck. RR Vol.4.p.137.

Within five minutes of Appellant recovering his speakers from the truck, Ms. Ulloa received a text message that she knew was from the Appellant based upon the phone number being used and the message content – "go look at your truck." RR Vol.4.pp.137-38, 142-43; State Exhibit No. 66. Shortly thereafter Officer Petrea arrived and took photos of Ms. Ulloa's damaged truck. RR

21

Vol.5.p.65; State Exhibit Nos. 62-65. The back window of Ms. Ulloa's truck had been broken out. RR Vol.4.p.139

These were not isolated assaults or criminal mischief. From the evening of February 4th through the morning of February 7th, Appellant intentionally harmed Ms. Ulloa for being a "snitch." Appellant was angry about Ms. Ulloa's February 4th interview with GPD Det. Johnston the night he showed up uninvited and assaulted her, and he was still angry with her a few days later when he damaged her truck. Ms. Ulloa told GPD during their investigation that Appellant stated she had incriminated him and that it could cause him issues in the criminal justice system. RR Vol.5.p.76. A rational juror could have found all of the evidence proved beyond a reasonable doubt Appellant's conscious, voluntary conduct caused Ms. Ulloa physical harm and property damage in retaliation for her GPD interview on February 4th.

## PRAYER

Appellant's trial was without prejudicial error. The State prays that Appellant's convictions and sentences be affirmed.

Respectfully submitted,

NOBLE DAN WALKER, JR.
**District Attorney**
**Hunt County, Texas**

_____
G CALVIN GROGAN V
**Assistant District Attorney**
**P. O. Box 441**
**4th Floor, Hunt County Courthouse**
**Greenville, TX 75403**
**State Bar No. 24050695**
**(903) 408-4180**
**FAX (903) 408-4296**

23

## CERTIFICATE OF WORD COUNT

In accordance with Texas Rules of Appellate Procedure 9.4(e) and (i), the undersigned attorney of record certifies that Appellee's brief contains a 14-point typeface and contains 4,614 words.

_____
**G CALVIN GROGAN V**
Assistant District Attorney


## CERTIFICATE OF SERVICE

A true copy of the State's brief has been mailed via first-class mail to Jason Duff, Appellant's attorney of record, today, January 23, 2015, pursuant to Texas Rules of Appellate Procedure.

_____
**G CALVIN GROGAN V**
Assistant District Attorney